STATE, Respondent, v. LOMBARDI, Appellant.*

*October 9—December 1, 1959.*

* Motion for rehearing denied, without costs, on February 2, 1960.

422

424

425

428

For the appellant there were briefs and oral argument by
*N. Paley Phillips,* attorney, and *Kenneth J. Phillips* of
counsel, both of Milwaukee.

For the respondent the cause was argued by *Herbert L. Mount* of Milwaukee, special prosecutor, with whom on the brief was *John W. Reynolds,* attorney general.

BROWN, J. Appellant submits that the informations do not charge him with any crime or misdemeanor, nor do the verdicts find him guilty of any because they do not charge or find that he acted from corrupt motives and therefore are defective.

Corruption, that is, action or nonaction motivated by personal gain or advantage to the sheriff, is not an essential element of the misdemeanors with which the sheriff is charged. His wilful refusal or nonperformance of duties imposed on him by law by virtue of his office constitute the offenses of which the sheriff is accused regardless of the presence or absence of the corrupt motive.

We consider that in form the informations and verdicts contain no reversible error. Their language is that of the statute itself, and the statute is identified by its appropriate number. In content each information recites the action or failure to act whereby the sheriff violated the statute. The time, place, persons involved, the event and circumstances of the alleged offense requiring the sheriff's performance or nonperformance of some act are described with certainty. The defendant seems to have had no difficulty in identifying the occurrences and events about which the state complains or in presenting his defense by uncertainty in the state's informations; nor do we think them at all vague or calculated to confuse or mislead the appellant. We find the informations and the verdicts comply with good practice and with due process of law.

Therefore we get to the merits of the case.

If there is any credible evidence which in any reasonable view supports a verdict in a criminal case it cannot be disturbed on appeal. *Imperio v. State* (1913), 153 Wis. 455,

141 N. W. 241; *State v. Hintz* (1930), 200 Wis. 636, 229 N. W. 54; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775; *State v. Fricke* (1934), 215 Wis. 661, 255 N. W. 724.

On the drunken-driving arrests of Seaman, Doherty, and Koshak, the record shows that each of them had an accident while driving his automobile, that a deputy sheriff reached the scene of the accident and from the driver's appearance and behavior the deputy concluded that he was under the influence of intoxicating liquor, arrested him and took him to the sheriff's office (generally referred to as the "station") and there made out a report stating that the person was arrested for drunken driving. He was booked as such on the station register. Thereafter the sheriff, disregarding the report of his deputy, excused, dismissed, or quashed any further proceedings against each driver so arrested and charged. Such dispositions of such cases were wilful, that is, intentional. The duty of the sheriff under the circumstances was for him to refer the arrest, with a full and complete report, to the prosecuting officer of the county, the district attorney, for further disposition. The sheriff's neglect to do so was a violation of his duty contrary to the provisions of sec. 348.29, Stats. 1953. The verdicts in the Seaman, Doherty, and Koshak matters are supported by the evidence and the judgments in those respects are affirmed.

The drunken-driving arrests of Winzenreid and Anoszko do not differ materially from the three traffic arrests just discussed, up to the point where the deputies' reports came into the sheriff's hands. In the Anoszko matter, on the day following the arrest the sheriff asked the arresting officer to change his report to show that Anoszko was arrested for reckless driving, instead of drunken driving. The deputy complied with the request of his superior officer, but at the trial he testified that he had no doubt but that Anoszko was under the influence of intoxicating liquor at the time when

he was operating his automobile. A specimen of urine was taken from Anoszko and given to the Waukesha Hospital for analysis and the sheriff was so informed. What happened to the test is not disclosed. The district attorney came upon the scene shortly after the accident and at the trial testified that it was he who made the charge, reckless driving, against Anoszko from his own observation and on his own responsibility. Under such circumstances the evidence does not support the verdict, Count 2, Information "B," that the sheriff "specifically ordered such charge [drunken driving] reduced to reckless driving." It may well be asserted that the "request" amounting to a command, under the circumstances, that the arresting deputy change his report and alter the arrest to one for reckless driving and the omission of reporting to the district attorney the circumstances of the arrest and the pending urine test, constitute breaches of duty by the sheriff. But the evidence is conclusive that the reduction of the charge *was not by the sheriff* and therefore contrary to the verdicts on Counts 2 and 3 of Information "B." Those verdicts, the judgments, and the attendant sentences must be reversed and set aside.

The material facts in the arrest and booking of Winzenreid for drunken driving are similar to those in the Seaman, Doherty, Koshak, and Anoszko episodes. The day after the arrest the sheriff asked the deputy who made the arrest, Janssen, to reduce the charge to reckless driving. Janssen said he would not. Thereafter the charge was so reduced and the information accuses the sheriff of making the reduction and the verdict found he did so. However, both Janssen and the district attorney testified that the district attorney questioned Janssen about the circumstances of the arrest and complaint after which the district attorney, himself, filed the reckless-driving charge. In our view the evidence does not sustain the verdict finding the defendant guilty of ordering the reduction of the charge against Winzenreid. That

verdict, and the resulting judgment and sentence must be set aside.

The verdict upon Count 4 of Information "A" is sustained by the evidence and the matters recited therein are violations of sec. 348.29, Stats. 1953. The judgment and sentence upon that count are affirmed.

Count 3, Information "B," pertains to an assault by Dominic Picciurro against Peter Picciurro.

The alleged assault took place at Dominic's tavern, Club 166. Eyewitnesses were at all times available for a prompt and thorough investigation. They testified at the trial that Dominic severely and brutally beat his son Peter about the head and face while Peter made no resistance. While this was going on the sheriff's office was notified by phone and deputies were sent to the scene. When they arrived the assault had ended. Peter's jaw was broken on both sides of his face. Sheriff's deputies took Peter to the hospital where he was hospitalized for several days. On the trip there Peter told the deputies that he was injured by falling down the tavern steps. He also told them that his father must have hit him 40 times. One of the deputies, Nordseth, who came to the scene, made a report with a complaint of assault attached to it. At the trial Nordseth testified that in his report to the sheriff he listed the names of the witnesses. The report cannot now be found.

When the sheriff received the report on the following day he said he would take care of it personally. Lombardi then interviewed Peter Picciurro at the hospital. Peter said he would not file a complaint against his father; that Dominic had not injured him but Peter had hurt himself. Lombardi made no further investigation or at least he testified to none. He made no report to the district attorney of his own volition, but the next day the district attorney heard rumors about the trouble at the tavern and inquired about it from the sheriff. Lombardi told him that he had investigated the

matter and it turned out to be merely family trouble, the son did not want to sign a complaint against his father, and the matter required no further attention. No further attention was given it either by the sheriff or the district attorney. But the sheriff did not tell the district attorney that the deputy sheriff had attached an assault complaint to his report, with names of witnesses, the sheriff did not interview the witnesses, nor did the sheriff inform the district attorney of the serious injuries which Peter had received. The record fully substantiates the conclusion that the sheriff found no facts to incriminate Dominic Picciurro because he preferred not to find them and he withheld from the district attorney the few important facts which the sheriff did know. The record sustains the verdict in Count 3, Information "B," finding Michael Lombardi guilty of failing to arrest Dominic Picciurro and of withholding material facts from the district attorney. The judgment and sentence on this count must be affirmed.

The remaining information and verdict is that of Count 5, Information "A." In brief, the state accuses and convicts the defendant of wilful neglect of his duty in the period between January 1, 1955, and June 30, 1956, in that he, the sheriff, knowingly permitted a tavern and night club known as Club 166 to operate in violation of the laws regarding prostitution, gambling, and sale of liquor; and the sheriff not only did not, himself, enforce the laws in those respects but prevented his deputies from interfering with the illegal operations of the club.

The club was operated by Mr. and Mrs. Dominic Picciurro. The record shows that the sheriff was a frequenter of the club and was a long-time, close friend to Dominic. An employee at the club testified that between January 1, 1955, and June 30, 1956, liquor was served there later than at legal hours and gambling was conducted there. During that time detectives from the state treasurer's office found

evidence of such liquor sales and gambling and the district attorney prosecuted and convicted Mrs. Picciurro of those offenses. Defendant's familiarity with the premises, his intimacy with the proprietors, and the testimony of the sheriff's deputies that Lombardi directed them to cease their surveillance of the club sustain the verdict that the sheriff knew of the violations of the liquor and gambling laws but wilfully failed to take any action to suppress them.

In combating the count referring to prostitution at Club 166 during the time stated, the appellant contends most vigorously that incompetent evidence of prostitution committed after June 30, 1956, was admitted, that this was strongly prejudicial and it constitutes reversible error. To summarize it, the record shows that in July, 1956, Mr. and Mrs. Picciurro hired two girls to work at the club as waitresses and prostitutes, dividing their fees for prostitution with the Picciurros. A third girl was engaged later. They were called as witnesses for the prosecution, were given immunity and testified that they carried on their profession at the club, both in solicitation and performance, and split the profits with the Picciurros. They saw Lombardi at the club during the time they were so employed. At Dominic's request one of the girls went out to dinner with Dominic and Lombardi. At dinner, the three being present, this girl was told that Lombardi was "keeping the heat off them," meaning by that that the sheriff was protecting them against interference with their unlawful activities. In return, the prostitute was then asked to extend her favor to Lombardi. She agreed and she and Lombardi went to bed together.

Lombardi denied all such conversation and misconduct. It is the jury which determines the credibility of the witnesses. *Schlesak v. State* (1939), 232 Wis. 510, 287 N. W. 703, and

"If a witness testifies wilfully falsely as to any material matter in the trial of a case, the jury may, if they see fit, but

are not bound to, reject all of such witness' evidence not corroborated by some other credible evidence." *Miller v. State* (1909), 139 Wis. 57, 82, 119 N. W. 850.

The court so charged the jury. At that point the state was attempting to show the sheriff's knowledge of the character of Club 166 and to show an intimacy between Picciurro and the sheriff which would affect the sheriff's conduct when Picciurro was concerned. The testimony concerned material facts and the jury could believe that Lombardi testified falsely in this and in other matters.

Other questions and answers bearing on that subject were:

"*Q.* I understood you to say, Mr. Lombardi, that you did not know Lem Picciurro very well. *A.* I didn't say I didn't know him very well. I knew him.

"*Q.* But I believe you said you knew 1,000 other people just as well? *A.* Yes, and maybe 30,000.

"*Q.* He was, in other words, no particular friend of yours? *A.* Just a friend of mine as any other people would be.

"*Q.* No more, no less? *A.* No more, no less."

It then developed that Lombardi was best man at Picciurro's wedding and that when Lombardi attended the annual sheriffs' convention at Antigo, Picciurro accompanied him and shared his room. This room was at a certain tavern. Lombardi testified that the hotels and motels were filled and they could not find accommodations till someone in Antigo suggested that they try the tavern referred to. But one of Lombardi's deputies testified that before the sheriff left Waukesha he told the deputy that when he reached Antigo he should come to the sheriff at that tavern, and when the deputy came there Lombardi and Picciurro had already arrived. Other instances occur in the record which provide ground for a belief by the jury that Lombardi's testimony is not reliable. Incidentally, the spectacle of the sheriff and

the whorehouse keeper journeying and rooming together at a police officers' convention is at least a piquant one.

There is, then, strong evidence that Picciurro was operating a house of ill-fame and that the sheriff knew it and did nothing about it, and prevented his deputies to concern themselves with it. The appellant submits that the evidence of the operation and the sheriff's knowledge of it begin at sometime in July, 1956, at the earliest, whereas the information and the verdict set the dates no later than June 30, 1956. So appellant contends that the evidence of the prostitutes who were not on the scene and who did not testify to any event before the middle of July was incompetent and of course was highly prejudicial. The trial court correctly instructed the jury:

"You are instructed that any evidence as to gambling after hours or prostitution at the Club 166 occurring after June 30, 1956, may not be considered by you as evidence of the commission by the defendant of any crime during the period between July 1, 1956, and January 7, 1957, since the defendant is not charged with the commission of any crime in connection with the said Club 166 during the period between July 1, 1956, and January 7, 1957.

"You are instructed that as to any such evidence of prostitution, gambling, or liquor violations in the Club 166 which allegedly occurred after June 30, 1956, you must confine your consideration of such evidence solely as it may,· if at all, bear weight on the question of the charge that the defendant knowingly permitted such illegal operations between January 1, 1955, and the 30th day of June, 1956.

"Evidence of the commission of other offenses is admissible where the evidence tends to establish some ingredient of the offense charged such as knowledge, intent, system, or design, and also to show that the crime charged is a part of a scheme or plan which includes numerous offenses. This rule applies to all such offenses whether committed before or after the date of the offense charged in the information so long as such offenses are connected and similar in character.

"It is the duty of sheriffs, constables, and other local police officers to enforce the provisions of secs. 348.07, 348.08, 348.09, 348.17, 351.19, 351.35, and 351.56 and ch. 176. All of the foregoing statutes relate to the sale of intoxicating liquor, gambling, prostitution, operating a gambling house, soliciting for purposes of prostitution, keeping house of ill-fame, or maintaining disorderly roadhouse."

We have followed the usual rule of admitting evidence of other occurrences in which a defendant has participated, when such others are similar in facts and close to the time of the offenses for which a defendant is on trial. The rule governing admission of evidence of such offenses was well stated by Mr. Justice OWEN speaking for this court in *State v. Meating* (1930), 202 Wis. 47, 51, 231 N. W. 263. We quote:

"The knowledge on the part of the defendants that the automobiles, the sales of which they promoted, and the licenses for which they made application, were stolen, was a material part of the state's case against them. They did not deny that they made sales of these automobiles or that they dictated the statements made in the applications for licenses and certificates of title, but their claim was that they did not know they were stolen, and, on the other hand, innocently supposed that they came to the Siegel agency through the usual channels as new cars. The evidence relating to the four automobiles not mentioned in the information tended strongly to show that they knew all about the business in which Siegel was engaged, and, in some instances, was sufficient to show that they themselves either participated in, or had direct knowledge of, the stealing of these cars. The evidence tended to show a design, purpose, plan, or scheme on the part of Siegel and his two salesmen to profit by trafficking in stolen cars. This was the purpose for which it was introduced, and, for this purpose, we think it was competent and material evidence."

In the present case the defendant is charged with permitting Club 166 to operate as a house of prostitution, know-

ing it to be such and wilfully refusing or neglecting to enforce the laws prohibiting such operations. So, in *Herde v. State* (1941), 236 Wis. 408, 413, 295 N. W. 684, we approved the admission of evidence that the defendant had recently committed a robbery under circumstances like the one for which he was now on trial. We said:

"In proof of criminal intent, the conduct of a defendant on other occasions closely connected in point of time and plan may at times be relevant to throw light on the defendant's motives and intentions while doing the act complained of. *Smith v. State*, 195 Wis. 555, 560, 218 N. W. 822; *State v. Meating*, 202 Wis. 47, 50, 231 N. W. 263. 'The intention with which a particular act is done often constitutes the burden of the inquiry, and to prove the intent it becomes necessary, in many instances, to extend the examination beyond the particular transaction concerning which the accused is upon trial. For the purpose, therefore, of proving intent, not of proving the act itself, it is often permissible to show other criminal transactions of the same sort springing from like mental conditions.' 2 Jones, Evidence (2d ed.), p. 1161, sec. 624. See also 1 Bishop, Criminal Procedure, sec. 1067."

The evidence of the prostitutes shows that although when Lombardi knew indisputably the nature and activities of Club 166 he found no reason to interfere with its operations but, on the contrary, protected it against interference by others. Other evidence establishes Club 166 as a house of ill-fame prior to June 30, 1956. For example, Witness Krueger testified that before that date he stopped in for a drink and one of the waitresses solicited him to employ her as a prostitute. The appellant submits that the woman was talking about something entirely different but when taken in context the jury was justified in Krueger's and the state's interpretation of the purpose of the woman's advances.

The state offered considerable proof that cars were coming and going at the Club 166 most all night and that Mrs.

Walther heard the activities as late as five o'clock in the morning. State beverage and cigarette tax men testified that the afterhours crowd was mostly all men and that three or four girls were working the bar. Such circumstances are, by statute, admissible as evidence that a place is a house of prostitution and being operated for immoral purposes.

The defendant has been a police or sheriff's officer for twenty-four years. With that experience and his frequent visits to the club he could not be unaware of the bawdyhouse character of Club 166 in the period before June 30, 1956. The evidence of its like character after June 30th is competent to show that the sheriff intended not to disturb the club's operations though his knowledge of them was complete, that is, he wilfully refused or neglected to perform the duties of his office. We conclude that competent evidence sustains the verdict on Count 5, Information "A," and the judgment and sentence upon it are affirmed.

Finally, numerous objections by the defendant to testimony in behalf of the state were sustained by the trial court. When the objection was sustained and the defendant moved to have the court instruct the jury to disregard such evidence the court did so. When the defendant did not so move, in general, the court did not instruct the jury to disregard it. Appellant submits that it was error by the court not to admonish the jury to disregard such evidence although the defendant did not move or otherwise request such an instruction. Appellant cites no authority to support his contention. In the absence of a motion that the court tell the jury to disregard evidence so ruled inadmissible we consider that the trial court does not commit error if it does not give the instruction now desired.

We conclude that the verdicts finding appellant guilty on Count 3 (d) of Information "A" (Winzenreid), Count 2 of Information "B" (Anoszko), and Count 3 of Information "B" (Anoszko), shall be set aside and judgment of convic-

tion and sentence thereon are reversed. In all other respects the judgments of conviction and the sentence pronounced thereon are affirmed.

*By the Court.*—The verdicts finding appellant guilty on Count 3 (d) of Information "A" (Winzenreid), Count 2 of Information "B" (Anoszko), and Count 3 of Information "B" (Anoszko), are set aside, and judgment of conviction and sentence thereon are reversed. In all other respects the judgment of conviction and the sentence pronounced thereon are affirmed. As so modified the judgment is affirmed, and the cause remanded for further proceedings not inconsistent with this opinion.