BULLOCK, Plaintiff in error, v. STATE, Defendant in error.

*No. State 21. Argued January 5, 1972.—Decided February 3, 1972.*
(Also reported in 193 N. W. 2d 889.)

810

For the plaintiff in error there was a brief by *Donald E. Mayew* and *Phillips, Richards & Mayew,* all of Kenosha, and oral argument by *Donald E. Mayew.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J.  It appears the alleged offense arises out of a dispute over the amount of money one Edward Laufenberg was to pay the defendant to "turn a trick." [1]

Initially, we would emphasize that, absent compelling circumstances in criminal cases tried before a jury, alleged errors not presented to the trial court on motions after verdict are not entitled to review by this court as a matter of right. *Finger v. State* (1968), 40 Wis. 2d 103, 161 N. W. 2d 272; *Schwamb v. State* (1970), 46 Wis. 2d 1, 173 N. W. 2d 666; *State v. Charette* (1971), 51 Wis. 2d 531, 187 N. W. 2d 203. In the instant case, the record discloses that defense counsel moved the trial court to set aside the verdict on the grounds that it was contrary to the evidence and in the interest of justice, or alternatively, to grant a new trial on these grounds. Such a motion has been held to raise the issue of sufficiency of the evidence. *Sartin v. State* (1969), 44 Wis. 2d 138, 170 N. W. 2d 727. *But cf. State v. Escobedo* (1969), 44 Wis. 2d 85, 93, 170 N. W. 2d 709. However, there is no challenge on this appeal to the sufficiency of the evidence. Therefore, the issues raised by the defendant on this appeal are reviewable only in the discretion of this court. *Williams v. State* (1971), 50 Wis. 2d 709, 184 N. W. 2d 844. In this case, we find no compelling circumstances requiring review. Nevertheless, in this particular case, and not by way of precedent, we exercise our discretion to review the issues raised.

---

[1] Defendant testified that the phrase "turn a trick" meant going to bed together for money.

Complainant Laufenberg testified that on June 20, 1970, at approximately 1:10 a. m. he was drinking beer at a tavern in the city of Kenosha when the defendant entered the tavern, approached him, and asked him to buy her a beer, which he did. Defendant then introduced him to a man she said was her brother-in-law (later identified as John Lambert), and after some conversation defendant asked the complainant to a party at her apartment. Complainant testified that he accepted the invitation at first and at the defendant's request purchased two six-packs of beer for the occasion. However, complainant then left the tavern alone, intending to go home. Defendant caught up with him outside and again asked him to go to the party. At this point another man was behind the defendant, to whom she turned and said, " 'Better look out or you'll get the 38, too.' " At defendant's insistence, complainant again agreed to go, and they got into her car and drove away. After they had proceeded two or three blocks, complainant asked to be let out, but the defendant replied, " 'You got in here, now you're going to stay in here.' " They proceeded to the rear of an apartment building where defendant got out of the car and handed the beer to her "brother-in-law" who had followed them to the apartment. At the same time, the complainant started to get out of the car, intending to take off, but before he could do so the defendant got back into the car, took a gun from the glove compartment, pointed it at the complainant and said, " 'You don't need to think that this gun ain't loaded or I wouldn't shoot.' . . . 'Give me your wallet.' " He handed it to her and after removing $3 the defendant exclaimed, " 'Is this all the money you got?' " She then ordered him, at gunpoint, to get out of the car and proceed upstairs to an apartment. Inside the apartment she again went through the wallet and found an additional sum of $37. Thereafter, she

told the complainant to jump out the window, but then ordered him to leave through the door. Complainant left and immediately summoned the police.

Defendant testified that she entered the tavern at approximately 12:30 a. m. in the company of two friends; that she met the complainant when he offered to buy her a drink; and that he bought her a half pint of gin. After some conversation, complainant stated to the defendant that he wanted to go to bed with her. Defendant agreed to do this for the sum of $25. (Defendant testified she was unemployed at the time and had lived in this apartment about two weeks.) Complainant then left the tavern alone because defendant did not want to be seen walking out with him. She obtained the keys to a friend's car, met the complainant outside, and they got into her car and drove away. Defendant denied making any statement to any other man outside the tavern. Upon arriving at the apartment, defendant got out and handed the beer to John Lambert who took it upstairs. Defendant then got back into the car and she and the complainant started drinking gin. Complainant then started making advances toward her; whereupon, defendant demanded her $25. Complainant stated he did not have that much and took $3 from his pocket and handed it to her. The defendant then demanded to see his wallet which he handed to her voluntarily, stating that there was no money in it. Defendant examined the wallet and removed $65 which she put in her brassiere. She then handed the wallet back to the complainant and told him to follow her upstairs, which he did voluntarily. Inside the apartment they again started drinking gin. Complainant stated he did not want to go through with it, but wanted his money back. Defendant told him he wasn't going to get his money back and that he was going to leave, one way or another. She also advised him there was a gun in the house and that she would get it if he didn't

leave. They began wrestling on the couch; defendant broke away and went to get the gun from the closet; and complainant headed for the door. Defendant then pushed him out the door. She testified that at no time did she point the gun at him or threaten him with it. Thereafter, an argument ensued between the defendant and Linda Hall, who owned the apartment and had been in the bedroom at the time of the incident. On cross-examination, defendant denied removing a gun from the glove compartment of the car or holding the complainant at gunpoint. She also denied introducing John Lambert to the complainant as her brother-in-law.

John Lambert and Linda Hall were called as witnesses for the state. Lambert testified he entered the tavern at approximately 1 a. m. and observed the defendant and the complainant at the bar. He could not, however, positively identify the man as Laufenberg, although the defendant had introduced them. Defendant then asked if she could go over to Linda Hall's apartment and Lambert consented. Lambert himself proceeded to the apartment by a different route but arrived there approximately at the same time. He took the beer from the defendant and carried it upstairs where he proceeded to the bedroom and began talking with Linda Hall. Defendant and the complainant then came into the apartment, passing the entrance to the bedroom on their way to the living room. It was dark in the apartment and Lambert testified he did not observe whether defendant or complainant were carrying anything. Approximately five minutes later an argument arose between Linda and the defendant over a gun. Thereafter the defendant left.

Albert Lambert, a witness called by the defense, testified that he had been with the defendant and another woman at the tavern. Complainant asked the defendant over to have a drink and purchased a half pint of gin for her. Thereafter, defendant asked Lambert if she

could use his car, stating that she was going over to Linda Hall's and would be right back. Albert Lambert further testified that he carried no gun in his car and that his glove compartment was locked at all times.

Additional facts will be set forth in considering the issues raised on review.

Appellant alleges that three errors occurred during the course of the trial:

(1) The trial court erred in receiving into evidence a prior inconsistent statement of a state's witness.

(2) Certain comments made by the trial court to defense counsel resulted in prejudice to the defendant.

(3) The trial court erred in examining the defendant about irrelevant matters.

### Statement of witness Hall.

Linda Hall testified that John Lambert came to her apartment at approximately 1:30 a. m. and that they were sitting in the bedroom, talking. Thereafter two other persons entered the apartment, who she was able to recognize as the defendant and the complainant. She then overheard an argument in which defendant told the complainant that if he didn't leave she was going to push him out the window. Complainant then left and she and the defendant began arguing over the noise. After Hall identified a statement she had made to the police on the afternoon of June 21, 1970, the state advised the court that this statement was inconsistent with her testimony at trial and moved the court to have her declared a hostile witness pursuant to sec. 885.35, Stats. 1967. Without divulging the contents of the statement, the state requested that the court allow the examination of Hall as a hostile witness. Defense counsel objected, but after a discussion in the presence of the jury on the legal points involved, defense counsel withdrew his objection and the state was allowed to

proceed. The court was of the opinion that until the state proceeded to make use of the statement he could make no ruling. Hall acknowledged her prior statement that she overheard defendant and the complainant arguing over some money. Defendant then pushed the complainant out of the front door of the apartment and came walking back towards the bedroom. Hall then asked her to see the gun she was holding and asked if it was Hall's. Defendant replied that she had obtained it from Albert Lambert's car. Hall also stated that she overheard the defendant tell complainant that she should make him jump from the window. On cross-examination, Hall testified that when defendant came into the apartment she had nothing in her hand. She further stated that she owned a gun which was kept in the closet. The state then moved into evidence the entire recorded statement of Hall. Defense counsel objected, arguing that only those portions which the witness acknowledged as true should be admitted. After some discussion, defense counsel withdrew his objection and the entire statement was received.

Defendant argues that the court erred in allowing the jury to consider, as substantive evidence, the prior inconsistent statement of Hall. However, no such error is supported by the record. The trial court instructed the jury they were not to consider Hall's prior statement as substantive evidence but only to use the statement in considering the credibility of the witness.

It is also argued that the court erred in receiving the entire statement into evidence rather than only those portions acknowledged at trial by the witness. Defense counsel initially made this objection, but after the court referred him to *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609, he withdrew his objection. *Gelhaar* has no direct bearing on the objection made by

defense counsel.[2] While prior inconsistent statements may not be introduced until they have been read to the witness in order that the witness may explain the contradiction, *State v. Johnson* (1936), 221 Wis. 444, 267 N. W. 14, in the instant case, the unread portion of the statement was not inconsistent with Hall's testimony at trial. The unread portion of the statement would have been properly objectionable as hearsay. *See Gelhaar v. State, supra; State v. Major* (1956), 274 Wis. 110, 79 N. W. 2d 75. No such objection was made by defense counsel, and the unread portion of the statement was not prejudicial, particularly in view of the trial court's instructions to the jury.

### Comments by trial court.

The defendant bases this issue on two separate exchanges between the trial court and the defense counsel.

The first occurred when the state attempted to impeach the testimony of Hall by use of her alleged prior inconsistent statement. The defense counsel requested to be heard on the issue outside the presence of the jury, which we observe is the more appropriate procedure. However, in this instance, the trial court refused to grant the request. Such a request is generally addressed to the discretion of the trial court and will not constitute grounds for reversal unless there is a showing of prejudicial effect on the jury or denial to the defendant of his right to a fair and impartial trial. *Pulaski v. State* (1964), 24 Wis. 2d 450, 458, 129 N. W. 2d 204; *Ramer v. State* (1968), 40 Wis. 2d 79, 83, 161 N. W. 2d 209; 23A C. J. S., *Criminal Law*, p. 945, sec. 1351.

[2] In *Gelhaar*, this court adopted a rule allowing a jury to consider, as substantive evidence, prior inconsistent statements of an opposing party's witness. This court declined to apply the new rule to hostile witness situations because the legislature had acted in this area. Sec. 885.35, Stats. 1967, presently sec. 972.09.

Defendant's argument is not predicated on abuse of discretion. Even if it were so directed, we find no prejudicial abuse of discretion. The argument, however, is focused on the impropriety and resulting prejudice of the comments made by the trial court. The issue is thus, whether the remarks had such a prejudicial effect on the jury so as to deny the defendant a fair and impartial trial. *Pulaski v. State, supra.* From a review of the record, it cannot be said that such was the situation in this case.

It is also argued that the refusal to allow defense counsel to be heard outside the presence of the jury and the remarks of the trial court in respect thereto created the impression that defense counsel was acting improperly and was attempting to keep evidence from the jury. However, the jury was allowed to hear the subsequent argument of counsel on the legal questions involved and the trial court instructed the jury that attorneys had the right to object to the admission of evidence which they felt improper and that no adverse inference was to be drawn therefrom.

The second exchange between defense counsel and the trial court referred to on appeal relates to a request by defendant for an early adjournment at noon so that the defendant could commence her case after the noon recess and proceed without interruption. The trial court observed that it didn't think the early noon adjournment necessary and that it didn't agree with the request of defense counsel, but, nevertheless, granted it. We find no substance to defendant's argument that these remarks were prejudicial.

An examination of the record reflects that the demeanor of the trial court throughout the trial was authoritative and commanding as to both the prosecution and the defense; however, in our opinion it cannot be described as hostile or biased. Furthermore, the jury was instructed to disregard any impression the trial

court may have given during the course of the trial, or in the giving of instructions concerning the guilt or innocence of the defendant and to decide the issues solely on the evidence. We conclude that the statements of the trial court did not have a prejudicial effect on the jury and that the defendant was not denied her right to a fair and impartial trial.

*Trial court's examination of defendant.*

After examination of the defendant by both the defense counsel and the state, the court asked her a series of questions about her family background and marital status. The state objected to this line of questioning on the grounds that it was irrelevant and immaterial. The court then asked defense counsel what his position was on the matter. Defense counsel stated that he agreed with the prosecutor but if the court felt it wanted the information and it would be helpful to the jury, he would go along with it. Defendant urges that the outcome of the trial depended largely upon the credibility of the defendant and that the questions did not serve to clarify her testimony but rather sidetracked the jury in this determination. Furthermore, it is argued that the questions were inherently prejudicial.

While the testimony elicited was unnecessary to clarify previously received testimony, *Flowers v. State* (1969), 43 Wis. 2d 352, 364, 168 N. W. 2d 843, and under the circumstances was unnecessary to aid in the discovery of the truth, *Lemerond v. State* (1969), 44 Wis. 2d 158, 164, 170 N. W. 2d 700, it cannot be said that the questioning demonstrated a lack of impartiality by the trial court. Neither can it be said that the testimony was inherently prejudicial. *See State v. Herrington* (1969), 41 Wis. 2d 757, 767, 165 N. W. 2d 120. This is not a situation where the trial court pursued a course of extensive examination indicating a premonition of guilt. *See United States v. Fry* (7th Cir. 1962), 304 Fed. 2d

296. We would again state that the jury was instructed to disregard any impression of the trial court as to the guilt or innocence of the defendant.

In *Flowers v. State, supra,* pages 364, 365, the court held:

". . . While, at an optimum, a trial judge should abstain from all comments or questions that would give the appearance of a prejudgment of guilt or hostility toward the defendant or his counsel, we see nothing herein of that nature which would require a reversal. . . ."

Likewise, from our examination of the entire record in this case, we find nothing of the nature that would require reversal.

The defendant has not been denied a fair and impartial trial, and it is not probable that justice has been miscarried. Therefore, no basis exists for granting a new trial in the interest of justice, pursuant to sec. 251.09, Stats. *See Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281.

*By the Court.*—Judgment affirmed.