COLLINGS and others, Respondents, v. PHILLIPS and others, Appellants.

*No. 279.   Argued February 3, 1972.—Decided February 29, 1972.*
(Also reported in 194 N. W. 2d 677.)

For the appellants there was a brief by *Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

For the respondents there was a brief by *Axel, Aaron & Goldman* and *Cook & Franke, S. C.,* attorneys, and *Gordon K. Aaron* and *Terence T. Evans* of counsel, all of Milwaukee, and oral argument by *Mr. Evans* and *Mr. Gordon K. Aaron.*

ROBERT W. HANSEN, J. Defendants map out three alternative routes that could lead to reversal: (1) Upholding defendants' contention that the trial court was "without jurisdiction" to enter a default judgment against them; (2) vacating the judgment on the ground it was secured by "excusable neglect" of the defendants; and (3) setting aside the judgment "in the interest of justice." None of the suggested roads to reversal are available to defendants on this record.

*Objection to jurisdiction.* By statute in this state, an ". . . appearance of a defendant who does not object to the jurisdiction of the court over his person is a general appearance and gives the court personal jurisdiction over him." [1] Here, following entry of default judgment, defendants moved the court to vacate the judgment on the grounds of their excusable neglect.[2] The order to show

---

[1] Sec. 262.16 (1), Stats.

[2] Pursuant to sec. 269.46 (1), Stats., providing: "The court may, upon notice and just terms, . . . relieve a party from a judgment, order, . . . or other proceeding against him obtained, through his mistake, inadvertence, surprise or excusable neglect . . . ."

cause, making no mention of jurisdiction, sought to have a proposed answer admitted, the answer seeking ". . . judgment dismissing plaintiffs' complaint on the merits." The hearing on the motion to vacate (a 71-page record) contains no mention of the word "jurisdiction." By such appearance and argument, defendants did secure a modification of the judgment, an 80 percent reduction in amount by reason of the striking of punitive damages. An objection to a court's jurisdiction is properly made by motion,[3] but the motion must be ". . . supported by an accompanying affidavit setting forth all material facts relied upon by movant to show the court's lack of personal jurisdiction." [4] The motion to vacate on the ground of excusable neglect was not such motion, and the accompanying affidavit was not such affidavit. Instead it was a general appearance clearly giving the trial court personal jurisdiction over the defendants under sec. 262.16 (1), Stats. A motion seeking to raise the issue of jurisdiction was made by substituted counsel, but it was made after the defendants had generally appeared and submitted to the jurisdiction of the court. By then it was too late.

*Excusable neglect.* Wisconsin statutes provide that a court ". . . may, upon notice and just terms . . . relieve a party from a judgment, order . . . against him obtained, through his . . . excusable neglect . . . ." [5]

---

[3] Sec. 262.16 (2), Stats., providing: ". . . An objection to the court's jurisdiction over the person . . . shall be raised as follows: "(a) By motion when a defect is claimed in the service of the summons without a complaint; or when the defect appears upon the face of the record other than the complaint; or in case of a judgment on cognovit or *by default*." (Emphasis supplied.)

[4] *Pavalon v. Thomas Holmes Corp.* (1964), 25 Wis. 2d 540, 547, 131 N. W. 2d 331.

[5] Sec. 269.46 (1), Stats.

This section "confers wide discretion on the trial court." [6] The trial court found no excusable neglect, and the question is whether such ruling constituted an abuse of such discretion. An extended hearing, plus briefs and arguments, was held. The trial court rejected the claim that defendants' counsel "didn't even know the file was in his office," stating, ". . . the plaintiffs in this case sued for one million sixty five thousand dollars and the court can't visualize a suit of that size lying around in any law office or insurance office for the period of time involved in this law suit." The trial court noted that ". . . The motion to vacate the default judgment (order to show cause) along with the proposed answer is dated November 4, 1970 (55 days after default)." The trial court correctly cited this court as having held that ". . . Prompt action by a defaulting party to remedy the situation caused by his neglect is a material factor to be considered when determining whether such neglect is 'excusable.' . . ." [7] The trial court further found that defendants' attorney, on or about October 1, 1970, had ". . . telephoned Attorney Aaron's [plaintiffs' attorney] office in Milwaukee and said he would call back on this case. On October 5, 1970, he again called Aaron's office, made an appointment for October 6, 1970, but did not keep it. His excuse for not keeping the appointment was that he had a court conflict. No further word from him was received by Attorney Aaron until the motion to vacate on November 4, 1970. . . ." This court has repeatedly held that ". . . the press of other trials and business is not such 'excusable neglect' as to make it an abuse of discretion not to grant relief under such statutes as secs. 269.46 (1) and 269.45 (2)." [8] On this record there clearly was no

[6] *Cruis Along Boats, Inc. v. Standard Steel Products Mfg. Co.* (1964), 22 Wis. 2d 403, 410, 126 N. W. 2d 85.

[7] *Id.* at page 410.

[8] *Id.* at page 409, citing *Millis v. Raye* (1962), 16 Wis. 2d 79, 113 N. W. 2d 820; *Jolitz v. Graff* (1960), 12 Wis. 2d 52, 106 N. W. 2d 340; *Millar v. Madison* (1943), 242 Wis. 617, 9 N. W. 2d 90.

abuse of discretion on the part of the trial court in finding no "excusable neglect" and in denying the application to vacate the judgment.

*Interest of justice.* By statute in Wisconsin, in any action or proceeding brought to this court by appeal or writ of error, this court "may in its discretion" reverse the judgment or order appealed from if it shall appear from the record ". . . that it is probable that justice has for any reason miscarried . . . ." [9] This court has stated that the authority conferred by this statute " 'is exercised with "some reluctance and with great caution" and only in the event of a probable miscarriage of justice.' " [10] In criminal cases, this court has stated, to reverse in the interest of justice " '. . . we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' " [11]

There is a particular reason for both reluctance and caution where the situation presented is that of seeking to set aside a default judgment where there has been no trial or testimony as to the truth or falsity of facts alleged in a complaint and denied in a proposed answer. It is a rare case where the record would affirmatively and conclusively show the defendant should have won if a full trial were had on the merits. If lack of record alone is to be an argument for "interest of justice" reversals, the application of sec. 251.09, Stats., would become near automatic on appeal of a trial court's denial of a motion to vacate a default judgment. The legislative requirement of sec. 269.46 (1), making "mistake, inadvertence, surprise or

[9] Sec. 251.09, Stats.

[10] *Nadolinski v. State* (1970), 46 Wis. 2d 259, 270, 174 N. W. 2d 483, quoting *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283. *See also: Kablitz v. Hoeft* (1964), 25 Wis. 2d 518, 527, 131 N. W. 2d 346, stating "interest of justice" reversals to be used "sparingly."

[11] *Commodore v. State, supra,* at page 383, quoting from *Lock v. State* (1966), 31 Wis. 2d 110, 118, 142 N. W. 2d 183.

excusable neglect" the required conditions for relief would be supplanted by any such broad interpretation of "interest of justice." The "interest of justice" reversal is and ought to be particularly difficult to obtain in a default judgment situation where sec. 269.46 (1) applies.[12]

This court has stated that it will not order a new trial in the interest of justice, under sec. 251.09, Stats., ". . . unless the court, viewing the case as a whole, is convinced that there has been a probable miscarriage of justice."[13] This means that ". . . the evidence and the law must be such that the plaintiff [defendants here] probably should have won and should therefore be given another chance. . . ."[14] We agree with the statement in respondents' brief that ". . . There is absolutely no showing on this record that a reversal of this judgment would subsequently result in a victory for the defendants. In fact, all the inferences in the record point the other way. . . ." The trial court in its opinion noted that "In this case Exhibit 3 . . . indicates there is now pending in Federal Court in Minnesota, an action entitled Barry Vogel et al. . . . against the same defendants. It is the same cause of action as in this case and the plaintiffs there are asking for three and a half million dollars." The trial court also noted, "Exhibit 1 is a letter from the St. Paul Insurance Co. of Minneapolis dated August 26, 1970, . . . apparently stating that the aggregate limit of their policy (malpractice) is $500,000. In plaintiffs' brief they also state there are other suits pending in Minnesota against the same defendants for over four million dollars." It is not difficult to see why an insurance carrier would prefer

[12] See: Wagner v. Springaire Corp. (1971), 50 Wis. 2d 212, 220, 221, 184 N. W. 2d 88, indicating "Since . . . the neglect was not shown to be excusable, we need not consider the merits of the defense. . . ."

[13] Puls v. St. Vincent Hospital (1967), 36 Wis. 2d 679, 693, 154 N. W. 2d 308.

[14] Savina v. Wisconsin Gas Co. (1967), 36 Wis. 2d 694, 704, 154 N. W. 2d 237.

a single class action on behalf of all stockholders and bond purchasers with substantial claims against these defendants. But without necessarily having to agree with the trial court's holding that the effort to set aside this judgment is "a race to the bank," we find nothing in this record or from any reasonable inferences deriving therefrom to establish any probability that defendants would prevail on the merits if this judgment were set aside. We find no basis, viewing the record as a whole, to conclude that justice has probably miscarried.

*By the Court.*—Judgments and orders affirmed.