IRBY, Plaintiff in error, v. STATE, Defendant in error.

*No. State 91. Argued September 4, 1973.—Decided October 2, 1973.*
(Also reported in 210 N. W. 2d 755.)

For the plaintiff in error there was a brief by *Melvin F. Greenberg,* and *Greenberg, Heitzman, Richter & Soglin,* all of Madison, and oral argument by *Melvin F. Greenberg.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HALLOWS, C. J.   The first contention is the conviction is not sustained by sufficient credible evidence.

### The sufficiency of the evidence.

We have examined the record and have come to the conclusion the jury on the evidence presented, which it had a right to believe and accept as true, acting reasonably could be convinced of Irby's guilt beyond a reasonable doubt.  This is the test on appeal, not whether this court or the members thereof are convinced of Irby's guilt. *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183; *State v. Dombrowski* (1969), 44 Wis. 2d 486, 171 N. W. 2d 349; *Johnson v. State* (1972), 55 Wis. 2d 144, 197 N. W. 2d 760.  The evidence is not so insufficient in probative value and force even though much of it is circumstantial that it can be said as a matter of law that no trier of the fact acting reasonably could be convinced to the degree of certitude required in criminal cases. *Lock v. State, supra; State ex rel. Kanieski v. Gagnon* (1972), 54 Wis. 2d 108, 194 N. W. 2d 808; *State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379.

The evidence disclosed that on July 5, 1971, about 11:25 p. m. in the 400 Bar in Madison, Virgil Frosch was shot from the blast of a sawed-off shotgun and died shortly thereafter.  Irby had been in the bar around 9:30 p. m., so was the victim Virgil Frosch, and Robert Gatson who was sitting at the bar near Frosch, with whom he engaged in conversation.  Sometime during the evening Irby left.  A witness Nancy Bernier had Irby coming back to the tavern, standing near a jukebox and the

restrooms or walking near the end of the bar by the jukebox. Some of the witnesses, and there were some 31 for the prosecution, testified to a noise sounding like a shot or a firecracker and some smoke near the jukebox. No witnesses testified that they saw Irby shoot Frosch. A gun with the barrel and stock shortened was identified as belonging to Irby. There was testimony Irby came to the room of Michael Thrall about 11:30 or 12:00 on the night of the shooting and appeared nervous and stated the next day to Thrall, after hearing the news broadcast, that he had an argument with an older man, shot him and threw the gun in the lake. The gun was recovered by the police, not in the lake but near it. It was identified as Irby's sawed-off shotgun. There was testimony by one LaMar Walker, an inmate at the state prison in Waupun, that he was a cellmate of Irby in Dane county jail; that Irby during an argument in a card game in jail, slapped a kid with his hand and reached into his pocket and pulled out a razor, stating he had killed one person and one more would not make any difference.

But, Irby claims the evidence is insufficient because some of the evidence of Bernier and Walker should not be considered and this raises the question of the admissibility of certain evidence.

### Impeachment testimony of Nancy Bernier.

Nancy Bernier testified for the state and placed Irby in the saloon near the jukebox when she heard a loud noise and saw a flash from the area of the jukebox, but did not see Irby shoot Frosch. On the preliminary hearing, she had testified she saw Irby shoot Frosch. The prosecutor was allowed to read into the record her prior inconsistent statement after the court held her to be a hostile witness. This, the court may do. *See* sec. 972.09,

Stats.; *Bullock v. State* (1972), 53 Wis. 2d 809, 193 N. W. 2d 889. However, previous inconsistent statements used to impeach one's own witness even though hostile may not be used as substantive evidence. *State v. Major* (1956), 274 Wis. 110, 79 N. W. 2d 75; *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609. Irby claims the impeachment testimony of Bernier was used substantively by the jury. This argument is based on the assumption the court did not instruct the jury on the limited use of the evidence.

The prior inconsistent statements of Bernier were of three kinds: A statement made to the police about two hours after the shooting; a statement made to the district attorney two days after the shooting, and her testimony at the preliminary hearing. In respect to the first two statements, the court asked defense trial counsel whether he had any objection to their admission in evidence and he had none. Counsel also did not specifically object to the receipt of Bernier's testimony at the preliminary hearing as an exhibit which would go to the jury. Trial counsel did not ask for any instruction on the limitation of the use of these statements. Therefore under the usual rules, counsel waived any objection to the use of the evidence if, in fact, the jury considered it substantive evidence. *State v. Cassel* (1970), 48 Wis. 2d 619, 180 N. W. 2d 607; *Price v. State* (1967), 37 Wis. 2d 117, 154 N. W. 2d 222, certiorari denied (1968), 391 U. S. 908, 88 Sup. Ct. 1662, 20 L. Ed. 2d 423; *State v. Cartagena* (1968), 40 Wis. 2d 213, 161 N. W. 2d 392; *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, certiorari denied (1965), 390 U. S. 959, 88 Sup. Ct. 1056, 19 L. Ed. 2d 1155.

However, it is argued the use of impeachment evidence as substantive evidence is a "plain error" and so fundamental as to taint the trial and make it unfair or biased. It is claimed such an error is an exception to

the waiver rule. McCormick, *Evidence* (2d ed.), p. 120, sec. 52. A "plain error" has been recognized on appeal where it involved issues of constitutional dimensions, but we see no constitutional issue here. *California v. Green* (1970), 399 U. S. 149, 90 Sup. Ct. 1930, 26 L. Ed. 2d 489. It is argued that sec. 972.09, Stats.,[1] forbids the use of prior inconsistent statements as substantive evidence. The statute expressly states a hostile witness may be impeached by the party producing him by evidence of his prior contradictory statements. *State v. Major, supra.* The *Major Case* involves the question of construing sec. 325.35, the predecessor section of 972.09, but not the question of granting authority to use inconsistent statements as substantive evidence. We do not think sec. 972.09 by implication forbids the use of prior inconsistent statements of a witness as substantive evidence where no objection is made by counsel. Generally, all probative evidence is admissible unless objected to on proper grounds. It follows that a trial court, although it may, is not required sua sponte to reject prior inconsistent statements as substantive evidence when counsel has made no objection. Neither is the trial court in such a situation required sua sponte to instruct the jury that the evidence was admitted for only the limited purpose of impeachment when there was no such understanding upon its admission.

---

[1] "972.09 **Hostile witness in criminal cases.** Where testimony of a witness at any preliminary examination, hearing or trial in a criminal action is inconsistent with a statement previously made by him and reduced to writing and approved by him or taken by a phonographic reporter, he may, in the discretion of the court, be regarded as a hostile witness and examined as an adverse witness, and the party producing him may impeach him by evidence of such prior contradictory statement. When called by the defendant, a law enforcement officer who was involved in the seizure of evidence shall be regarded as a hostile witness and may be examined as an adverse witness at any hearing in which the legality of such seizure may properly be raised."

*Testimony of LaMar Walker.*

At trial, defense counsel objected to the evidence concerning an argument between Irby and another inmate in the county jail as being irrelevant. His objection was overruled. Likewise, his objection was overruled concerning the statement Irby made during the argument to the effect that he had killed a person and killing one more would not make any difference. The general rule is that evidence which tends to prove another crime is inadmissible to prove the crime for which the defendant is presently charged. *State v. Raether* (1951), 259 Wis. 391, 393, 48 N. W. 2d 483; 1 Wharton's, *Criminal Evidence* (Torcia, 13th ed.), pp. 528–531, sec. 240; *State v. Stevens* (1965), 26 Wis. 2d 451, 132 N. W. 2d 502; *State v. Lombardi* (1959), 8 Wis. 2d 421, 99 N. W. 2d 829. In *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557, this court stated the rule excluding evidence of prior crimes rests on four bases: ". . . (1) The overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts; (2) the tendency to condemn not because he is believed guilty of the present charge but because he has escaped punishment from other offenses; (3) the injustice of attacking one who is not prepared to demonstrate the attacking evidence is fabricated; and (4) the confusion of issues which might result from bringing in evidence of other crimes. . . ." *Id.* at page 292.

However, as pointed out in *Whitty* when another crime evidence is relevant or probative with regard to the charge on which the defendant is being tried, it may be admitted in the discretion of the trial court. Here, the threat to another was coupled with an admission of the crime charged or could be so construed. We think the evidence concerning the argument in the county jail and the statement made by Irby during such argument has

probative value which would outweigh any prejudice if the other crime rule applies. While the evidence had no value in proving an element of the crime charged, the evidence concerning the argument was relevant in respect to the alleged admission by Irby during the fight in order to put the alleged admission in proper context so that the credibility of Irby could be evaluated. But it would seem that evidence of an admission related to the crime charged even though it occurs in the course of another crime should not be excluded on the basis of prejudice. Here, the admission overshadows any collateral prejudice arising from being put in the context of another crime. We find no error in the trial court in admitting this evidence.

### List of witnesses.

Irby moved to discover the names and addresses of the persons the state intended to call as witnesses, relying on sec. 971.23 (3) (a), Stats.[2] The court required the district attorney to provide such a list and in response thereto Irby was provided with a list containing some 97 names, which included members of the Madison police department, state crime laboratory, fire department, hospital employees, doctors, and others. The list in-

[2] "971.23 Discovery and inspection . . .

"(3) LIST OF WITNESSES. (a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial. This section shall not apply to rebuttal witnesses or those called for impeachment only."

cluded LaMar Walker. Irby protested the length of the
list, but the trial judge did not limit the list, stating he
could not decide whom the prosecution intended to call
as witnesses. A few days later the prosecutor informed
Irby that his office had just become aware of a statement
made by Irby in the Dane county jail and that Walker
had been interviewed the previous day. The statute, sec.
971.23 (7), places a continuing duty upon a party to
disclose additional witnesses when once requested.[3] Upon
receiving this information, Irby moved for a two weeks'
continuance or the suppression of the Irby statement.
The request was denied but the defense was allowed to
interview Walker prior to his testifying at the trial
which was commenced a few days later. Trial counsel did
examine Walker and counsel indicated no dissatisfaction
with the amount of time granted by the court to inter-
view the witness nor did he renew his request for a con-
tinuance after the examination.

We conclude the court was in error in not requiring
the prosecutor to be more specific with the witnesses
whom he intended to call. Sec. 971.23 (3) (a), Stats.,
allows a pretrial discovery by the defendant, but it is
limited to not less than fifteen days nor more than thirty
days before trial. Underlying this time period is the
concept that at that time the attorneys for the parties
are in trial preparation and should know whom they in-
tend to use as witnesses. This time period is a realistic

---

[3] "(7) CONTINUING DUTY TO DISCLOSE; FAILURE TO COMPLY. If,
subsequent to compliance with a requirement of this section, and
prior to or during trial, a party discovers additional material or
the names of additional witnesses requested which are subject to
discovery, inspection or production hereunder, he shall promptly
notify the other party of the existence of the additional material or
names. The court shall exclude any witness not listed or evidence
not presented for inspection or copying required by this section,
unless good cause is shown for failure to comply. The court may
in appropriate cases grant the opposing party a recess or a con-
tinuance."

appraisal that in the mass of routine criminal cases serious preparation for trial is not commenced until shortly before trial. Our statute, unlike the Florida statute (Fla. Cr. P. R. 1.220 (e) ) which requires the prosecution to furnish a list of all witnesses known to him to have information which may be relevant to the charge or to the defense, requires only a list of the witnesses that the district attorney intends to call at trial. As a condition precedent of the request by the defendant, he must furnish a list of the witnesses he intends to call at the trial. If this prediscovery technique is going to work to the advantage of the prosecutor and the defense, a blown-up list of witnesses or one which includes witnesses whom the attorney has no serious intention to call should not be permitted. This requirement of intention to call the witnesses listed is one of the chief aims of the discovery procedure—to inform the opposing party of evidence to be produced at trial so he can most effectively test its validity. If we read the record correctly, some of the witnesses given by the prosecution had not been interrogated and it is difficult to see how the prosecutor intended to call them as a witness if he did not know what they were going to say.

The pretrial discovery is a device to speed up trials, to make them more fair and to eliminate some of the sporting features of the old-fashioned criminal trial in the search for justice.[4] This being so, counsel cannot use

[4] American Bar Association Project on Standards for Criminal Justice, *Standards Relating to Discovery and Procedure Before Trial*, Approved Draft, p. 52, sec. 2.1 (a) (i) provides:

"2.1 **Prosecutor's obligations.**

"(a) Except as is otherwise provided as to matters not subject to disclosure (section 2.6) and protective orders (section 4.4), the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

"(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their relevant written or recorded statement; . . ."

this discovery to harass or to place the opposite party under an unreasonable burden of preparation. We think the trial court should have conducted a hearing to discover which of the 97 witnesses the district attorney in fact and in good faith intended to call.

But this error does not necessarily require a reversal unless there is a showing of surprise and prejudice by the defendant. *People v. Brown* (1970), 125 Ill. App. 2d 336, 261 N. E. 2d 11; *People v. Raby* (1968), 40 Ill. 2d 392, 240 N. E. 2d 595.

In this case, trial counsel accepted the time given by the court to interview Walker during the trial the day before he was to be called as a witness. Since the defense was afforded an opportunity to talk to Walker and did not ask for a continuance thereafter or make any showing of prejudice or surprise and proceeded with the trial without complaint, the error on the record is harmless. It is argued by appellate counsel there was prejudice, but the record does not sustain this argument nor did the trial counsel claim he was prejudiced. We point out when an error is claimed amounting to noncompliance with or abuse of the witness-list requirement, the error or abuse may in some cases be cured by the court granting the other party a continuance so he can adequately prepare for trial, *People v. White* (1970), 123 Ill. App.

The commentary to this section reads:

"*Names, addresses and statements of witnesses* (sec. 2.1 (a) (i)). This subsection not only facilitates plea discussions and agreements but also goes to the heart of the general proposition that defense counsel must be permitted to prepare adequately to cross-examine the witnesses against the accused and otherwise test their credibility, as well as to produce other evidence relevant to the facts in issue. See secs. 1.1 (a) (iii), . . ."

It is recognized there may be cases in which the prosecutor's decisions about calling a witness in chief may be delayed until during the trial itself but this fact is no justification for an indiscriminate list of witnesses which can only waste time by requiring an application to the court.

2d 102, 259 N. E. 2d 357; *Gallegos v. State* (1968), 84 Nev. 608, 446 Pac. 2d 656, or by recessing for a period sufficient to allow counsel to interview the witness (which was done here). *People v. Armour* (1970), 133 Ill. App. 2d 126, 263 N. E. 2d 885; *People v. Knox* (1968), 94 Ill. App. 2d 36, 236 N. E. 2d 384. The granting of a continuance or recess is to be favored over striking the witness. *Williams v. State* (Fla. District Court of Appeal 1972), 264 So. 2d 106. In order to qualify for a continuance or recess, most courts require the continuance be requested in a timely fashion and that the defendant be surprised and prejudiced by the testimony. *People v. White, supra; State v. Gaines* (1967), 6 Ariz. App. 561, 435 Pac. 2d 68.

*Failure to strike jurors for cause.*

Irby contends several of the prospective jurors should have been struck for cause because they stated they would require the defense to present evidence on the burden of proof issue. Two of such jurors were rehabilitated. Two others were excused and one did not serve. The remaining two (Gentilli and Collins) later heard the court instruct juror McCormick, who had also indicated he would require proof, that "under our law a defendant does not have to take the stand and you can draw no inference from the fact he does not take the stand." Defense counsel thereafter did not ask Gentilli and Collins whether they would require the defense to present evidence. On *voir dire* the court thoroughly instructed the jury panel on the presumption of innocence and on the fact no inference could be drawn from the defendant's failure to testify. Thereafter defense counsel asked McCormick and another prospective juror whether they would require the defendant to testify and then asked in effect whether there were any other jurors who

would require the defendant to testify. No prospective juror, including Gentilli and Collins, indicated they believed the failure of the defendant to testify would affect their consideration of the case. In the instructions to the jury the court again emphasized the defendant was not required to prove his innocence or to take the stand and the jury could not draw any inference from the defendant's failure to testify. We think under these facts there was no requirement upon the court to strike prospective jurors Gentilli and Collins for cause.

### Interest of justice.

It is argued a new trial should be granted in the interest of justice, but we have said time and again this court would at least have to be convinced the defendant should not have been found guilty and that justice demands that he be given another trial before we would reverse. *See Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183, followed as recently as *Collings v. Phillips* (1972), 54 Wis. 2d 204, 194 N. W. 2d 677. We think the defendant was fairly found guilty and convicted.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(concurring).* The writer concurs in affirmance, but, where the majority finds harmless error in the trial court's admitting the list of witnesses furnished by the prosecutor, the writer would find no error at all. Defendant moved and the trial court ordered the prosecution to provide names and addresses of witnesses it intended to call at the time of trial. The prosecutor furnished a list of 97 witnesses, 50 of which were public employees or medical witnesses. (Thirty-one were members of the Madison police department, two were members of the Madison fire department, two were deputy sheriffs, five were employed by the state crime

laboratory, one was a Madison city planner, two were hospital employees and seven were doctors.) As to such witnesses, whether one or more persons in each category would be called to the witness stand would depend on the turn of events at the trial. If matters related to police custody or medical records were not disputed, one witness in a category might be all that was needed. Given challenge or dispute, the others would be needed. At the time of furnishing the list, the district attorney could not say other than that he intended to call all of these witnesses if and when their testimony was required by what transpired at the time of trial. Actually, 22 of these witnesses were called to testify at the trial.

Additionally, 47 witnesses who could be called civilian witnesses, not policemen or firemen or doctors, were listed. Of these, nine were called as witnesses. The defendant furnished a list of 59 witnesses that he intended to call. Every name on the prosecutor's list of civilian-type witnesses was listed on the defendant's list. In fact, the name and address of LaMar Walker, whose appearance on the witness stand was claimed by the defense to constitute a surprising development, was listed on the defendant's list of intended witnesses, as well as on the state's list. Since the first two pages of the defendant's three-page list of witnesses that the defense intended to call was a recapitulation of all the civilian witnesses that were listed in the state's list, we see no basis for either the claim that the state's list was too long or that the defendant was surprised by a witness taking the stand whom he had listed as one he intended to call.

The majority opinion sees a great variance in our statute requiring furnishing a list of witnesses the district attorney "intends to call" (sec. 971.23 (3) (a), Stats.) and a Florida statute requiring furnishing a list of witnesses known by the prosecutor "to have information which may be relevant to the offense charged, and

to any defense of the person charged . . . ." (Fla. Cr. P. R. 1.220 (e)). The writer does not. Obviously, the Florida law requires more than the Wisconsin statute, but each states a minimum requirement, not a maximum limit. The purpose of both is to serve the purpose of full disclosure of the names and addresses upon whose testimony the prosecution, or defendant, may rely. The writer agrees with the court majority that the Wisconsin statute requires only that the prosecutor furnish a list of witnesses whom he intends to call as witnesses, as of the date on which the list is furnished. However, the writer would read into the statute no prohibition against furnishing additional names of witnesses whom the prosecutor believes possess relevant information and who may, dependent upon developments at the time of trial, be called as state witnesses. The writer sees no error in the trial court refusing to order the district attorney to submit a more abbreviated list of intended state witnesses, particularly not where the defendant placed on his list of intended witnesses every civilian witness listed by the prosecution, including the very witness whose testimony raises the issue.