**Cornelius Otis McCURRY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 2168.

Supreme Court of Alaska.

July 14, 1975.

William C. Newman, Legal Intern, Phillip P. Weidner, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage,

Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and BURKE, Justices.

## OPINION

RABINOWITZ, Chief Justice.

After trial by jury, appellant Cornelius Otis McCurry was found guilty of the crime of receiving and concealing stolen property in violation of AS 11.20.350.[1]

McCurry advances four separate specifications of error. These encompass assertions that the trial court erred in failing to grant his motion for judgment of acquittal, in giving the jury an instruction concerning aiding and abetting, in permitting the prosecution to make improper comments in the course of closing argument, and in allowing the prosecution to call a rebuttal witness without requiring disclosure to defense counsel of this witness's name.

 It is well established that on appeal from a denial of a motion for judgment of acquittal, we "must view the evidence and the inferences to be drawn therefrom in a light most favorable to the state." *DeSacia v. State,* 469 P.2d 369, 371 (Alaska 1970) (footnote omitted). Guided by this criterion, it is our task to determine whether fairminded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt.[2]

---

1. AS 11.20.350 reads in part:
 A person who . . . receives, or conceals . . . [any]thing which may be the subject of larceny and which has been . . . stolen from another person, knowing it to have been . . . stolen, is punishable by a fine of not more than $1,000 and by imprisonment for not less than one year nor more than three years.
 McCurry was sentenced to a term of three years imprisonment with two years suspended.

2. *Beavers v. State,* 492 P.2d 88, 97–98 (Alaska 1971).
 In the event that challenge goes to the sufficiency of the evidence to support the conviction, we have stated the applicable appellate standard in the following manner:
 [T]he evidence and the inferences to be drawn therefrom are to be viewed in a light most favorable to the state. The question, thus, is whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to sup-

The evidence shows that in July of 1973, Ronald Reynold, an Anchorage teenager, was interested in purchasing a bicycle. He met a person whom he later identified as McCurry who offered to sell him a yellow bike. Reynold accepted the offer and subsequently went to a house located at 11th and Nelchina where he had previously seen McCurry. Reynold then asked for the person who indicated he wanted to sell him a bike. The person who had come to the door replied, "you mean Rabbi", and called out that name.[3] McCurry then appeared. After Reynold cashed a check and returned to the Nelchina premises (McCurry having refused to accept the check), Reynold received the yellow bike.

Either later that day or the next, Reynold again saw McCurry (Rabbi) who was riding a brown Schwinn ten-speed. McCurry offered to sell him the brown bike and take the yellow bike back, but Reynold declined. Reynold's mother later discussed purchase of the brown bike with McCurry as she wanted a bike for her other son.

Mrs. Reynold became suspicious of the yellow bike (whose serial number was filed off), and reported the transaction to the police. After talking to Mrs. Reynold and her son, Officer Senter went to McCurry's apartment and was told he was not at home. While there he observed the brown bike in front of McCurry's door.[4] Upon checking with headquarters, Senter ascertained that the brown bike was listed as stolen and seized it. He also observed about fifteen bikes around the premises, including two which were located inside McCurry's door.

Officer Senter later returned to the apartment and asked for McCurry and was told he was out. He then observed McCurry come from behind the building, get in a car and start to leave. He stopped McCurry, who gave him the name and ID of a person an accompanying officer knew to be in jail. Appellant then gave a second false name, but when Senter suggested he was really Cornelius McCurry, appellant admitted it. Senter then arrested McCurry for the offense of receiving and concealing stolen property.[5]

Additionally, we think it significant that both Reynold and his mother identified the stolen bike, an exhibit at the trial, as the one they had seen McCurry riding. It was the same brand, same model, and the same color. Both the stolen bike and the bike McCurry possessed had fenders, unusual for a 10-speed.[6]

■ Reviewing the evidence produced at trial in the light most favorable to the state, we cannot find that the superior court committed error in denying the motion for judgment of acquittal. In our view, fairminded men could differ on the question of whether guilt had been established beyond a reasonable doubt under the evidence which we have summarized above.

McCurry next contends that the superior court erred when it gave the jury an aiding and abetting instruction. The instruction in question reads as follows:

---

port a conclusion by a reasonable mind that there was no reasonable doubt as to appellant's guilt.
*Hughes v. State*, 513 P.2d 1115, 1117 (Alaska 1973) (citations omitted), quoting *Beck v. State*, 408 P.2d 996, 997 (Alaska 1965).

3. The question of whether the person with whom Reynold dealt was McCurry was the paramount issue at the trial. Reynold identified McCurry as the "Rabbi" with whom he had dealt, although he had "a little bit of doubt." Reynold's mother identified McCurry as the seller of the bike.

4. McCurry's door was one of several leading off a common porch. McCurry and two or three other men lived there.

5. The arrest and the indictment were in reference to the brown bike only, not the yellow bike, which also turned out to be stolen.

6. Reynold did express some doubt as to the color of the footclips; he thought the clips on the bike McCurry offered him were black, but apparently after viewing the stolen bike in court, he was less sure.

Every person who buys or receives property which has been stolen, knowing the same to be stolen, or who conceals, withholds, or aids in concealing or withholding such property from the owner knowing the same to have been stolen, is guilty of a crime.

■■ We are of the view that the reference to "aids" in this instruction is technically erroneous since there was no evidentiary basis for the giving of this instruction. Nevertheless when viewed within the evidentiary context of the trial and the instructions taken as a whole, we are convinced that the error was in the nature of harmless error. For when the instructions are reviewed in their entirety it is clear that the jury was not instructed on any theory that McCurry could be found guilty as an aider and abettor. Nor did the prosecution argue that the jury should convict McCurry as an aider and abettor. In light of these factors, we find it difficult to conclude that the jury could have been misled by the inclusion of "aids" in the questioned instruction, and therefore thought McCurry not the principal, but a mere aider and abettor.[7]

We turn next to appellant's attack on portions of the prosecutor's final argument to the jury. The segment of the prosecutor's final argument which McCurry finds objectionable and contends warrants the granting of a new trial reads as follows:

. . . There were 2 efforts presented here in defense. Number (1) the defendant did not live in that apartment, that he lived with his folks. Number (2) that he was not known as Rabbi. And kind of along in there, they throw in a third effort, we try to establish that his brother Willy was with him over the summer. Well, I kind of got the suspicion he was too, but I don't know wheth-er it was in July or June or August or September and the witness Thomas didn't know when he came or when he left. I'd like to have you tell me or tell —you don't tell me anything. I'd like to have you question if a man is going to put on any defense based upon those particular points, who are the best possible witnesses available to the defendant to testify as to those facts? The defendant's mother and father. His father is in the courtroom; his mother is in the town, and I happen to know they're very fine people. Why didn't they come in and say the defendant lived with us all summer? Why didn't they come in and say Willy is here, came here at such and such a day and left at such and such a day. He's my son, I know why they didn't come in and say Willy is known as Rabbi. Neal is not known as Rabbi. I'll tell you why they didn't come in and say it, they wouldn't come in an say it.

McCurry specifically contends (1) that this was improper comment on the defense's failure to produce a witness and comment on facts not in evidence, and (2) that the reference to the parents as "fine people" and as being available constituted improper vouching for the character of a potential witness.

We note that McCurry's counsel failed to make any objection at the time these statements were made by the prosecutor during his final argument. Ten days after the jury had returned its guilty verdict, at a hearing on a mistrial motion, defense counsel, for the first time, objected to the statement of the prosecutor regarding McCurry's father on the grounds that this was "direct testimony by the district attorney."[8]

■ Although there is a considerable body of law which lays down the general

---

7. McCurry also seems to argue that an accused may not be convicted as an aider and abettor under an indictment which charges him as a principal. This is not the law in Alaska. See AS 12.15.010 and *Ransom v. State*, 460 P.2d 170 (Alaska 1969).

8. The other reasons for objecting to the prosecutor's statements were not articulated until this appeal.

rule that it is improper to comment on the failure of the defendant to call particular witnesses,[9] we think that defense counsel's failure to object to the questioned portion of the prosecutor's argument is dispositive of this issue. For we have consistently held that in the absence of an objection at trial, we will reverse only where there is plain error. Typical of our decisions to this effect is *Garroutte v. State,* 508 P.2d 1190, 1191 (Alaska 1973), where we said:

Since no objection was raised when this remark was made, we must be satisfied that the occurrence at trial amounted to plain error before we will reverse. . . . Suffice it to say that an appellant asserting plain error for the first time on appeal must shoulder the heavy burden of demonstrating that the alleged misconduct raises a substantial and important question. . . . (footnotes omitted) [10]

The parties to this appeal agree that the usual rule is that comment on the failure to call a witness is proper only when the witness is peculiarly within the control of the defendant and that witness's testimony can reasonably be expected to elucidate matters already at issue. *See Gass v. United States,* 135 U.S.App.D.C. 11, 416 F.2d 767 (1969); *United States v. Blakemore,* 489 F.2d 193 (6th Cir. 1973). *Compare Marrone v. State,* 359 P.2d 969 (Alaska 1961); *Lewis v. State,* 452 P.2d 892, 898 n. 27 (Alaska 1969).

We note, without deciding the question, that as applied to the instant case, this body of law tends to cut against McCurry's position. His parents, while technically equally available to the prosecution, did have a "special relationship" to the accused which would render them more likely to cooperate with the defense. And while McCurry himself did not testify, his whole line of defense centered on questions of identity and residence which his parents were possibly in a position to "elucidate".

Nevertheless, an objection at trial would have afforded the superior court an opportunity to make inquiry regarding the factors noted in *Gass* and *Blakemore* and to caution the jury if it found the remarks improper and possibly admonish the prosecutor.

■ Given the absence of a timely objection to the prosecutor's final argument, and the fact that the trial judge, on three separate occasions, instructed the jury not to consider counsel's argument as evidence in the case, we conclude that the prosecutor's allegedly improper comment on McCurry's failure to produce a witness was not plain error in the particular circumstances of this record.

■ As was mentioned previously, McCurry also argues that the prosecutor's statement, "I happen to know they're [McCurry's parents] very fine people", constituted improper vouching for the character of a potential witness. In *Darling v. State,* 520 P.2d 793 (Alaska 1974), we held that the "personal vouching" for a witness's credibility was improper. This case presents the obverse, vouching for the credibility of a non-witness, but the two have essentially the same character as personal testimony by the prosecutor.[11] Al-

9. *See,* in general Wigmore on Evidence (3d Ed.) § 285–91, 2273. *See also Graves v. United States,* 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893); *McAbee v. United States,* 111 U.S.App.D.C. 74, 294 F.2d 703 (1961); *Richards v. United States,* 107 U.S. App.D.C. 197, 275 F.2d 655 (1960).

10. Rule 47(b), Alaska Rules of Criminal Procedure, provides:
(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

*See McCracken v. State,* 439 P.2d 448 (Alaska 1968).

11. We have upheld prosecutorial characterizations which were "reasonable inferences" from evidence on the record, in *Howard v. State,* 491 P.2d 154 (Alaska 1971) and *Tracey v. State,* 391 P.2d 732, 734 (Alaska 1964), while cautioning counsel to "stick to the record", *Anderson v. State,* 384 P.2d 669 (Alaska 1963), and the reasonable inferences therefrom, *Gafford v. State,* 440 P.2d 405, 414 (Alaska 1968).

though the remark was improper, we think the effect of the lapse was de minimis and did not constitute plain error.[12]

This brings us to the final specification of error in this appeal. Here, McCurry claims that the state was permitted to use a rebuttal witness contrary to Criminal Rule 16 and due process of law. McCurry's defense centered on the question of whether or not he was the "Rabbi" who dealt with Reynold. At the conclusion of the defense case, on November 7, McCurry's counsel seems to have requested the state's attorney to inform him of "what kind" of witnesses would be put on in rebuttal. On the morning of the 8th, immediately preceding the start of the prosecutor's rebuttal evidence, McCurry's counsel again raised the point in order to determine questions of relevancy before the jurors were brought into the courtroom. The prosecutor at that time gave McCurry's attorney the names of two of the three rebuttal witnesses who subsequently testified, and stated that there might be a few more, teachers or neighbors who would testify as to McCurry's nickname and place of residence.

This situation arose because, at the end of the defense's case, the prosecutor seems to have realized he needed additional evidence, so that evening he went out to the Nelchina neighborhood with police investigators in an attempt to locate rebuttal witnesses. By 9 p. m., the state's attorney knew what he wanted to present in the way of rebuttal evidence, so he retired for the evening. The next morning he sent investigators out with blank subpoenas; in response, the third witness, Victor Doucet, a local barber, appeared in court.[13] Doucet basically testified that McCurry was "Rabbi". McCurry now claims on appeal that the failure to provide Doucet's name in advance violated Criminal Rule 16 and was highly prejudicial to McCurry's case.

The requirement that the prosecution furnish the defense a list of its prospective witnesses is founded on rule or statute in most jurisdictions.[14] As for whether rebuttal witnesses come within the purview of the witness list requirement, the general rule seems to be that they do not, so long as the rebuttal is true rebuttal and not an attempt to present the state's case-in-chief in the rebuttal.[15] Alaska Rule of Criminal Procedure 16(b) reads in part:

(1) *Information within Possession or Control of Prosecuting Attorney.*

Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

(1) The names and addresses of persons known by the government to have knowledge of relevant facts and their

12. *See* ABA Standards, The Prosecutorial Function 5.8.

13. It is unclear when the prosecutor first knew of Doucet, but he himself had not talked to Doucet before the latter testified.

14. In general, *see* VI Wigmore on Evidence (3d ed.) §§ 1849–55.

15. *See*, e. g., *Goldsby v. United States*, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343 (1895); *State v. White*, 74 Wash.2d 386, 444 P.2d 661 (1968); *Thompson v. State*, 230 Md. 113, 186 A.2d 461 (1962); *Breedlove v. State*, 295 So.2d 654 (Fla.App.1974); *People v. Hawkins*, 18 Ill.App.3d 1005, 311 N.E.2d 226 (1974); *Lincoln v. State*, 508 S.W.2d 635 (Tex.Crim.App.1974); *United States v.*

*Windham*, 489 F.2d 1389 (5th Cir. 1974); *People v. Lucien*, 14 Ill.App.3d 289, 302 N.E. N.E.2d 371 (1973); *State v. Stambach*, 76 Wash.2d 298, 456 P.2d 362 (1969). *Cf. State v. Driver*, 38 N.J. 255, 183 A.2d 655 (1962); *People v. Manley*, 19 Ill.App.3d 365, 311 N. E.2d 593 (1974); *People v. Jarrett*, 22 Ill. App.3d 61, 316 N.E.2d 659 (1974); *Allison v. State*, 62 Wis.2d 14, 214 N.W.2d 437 (1974).

The new Federal Rules of Criminal Procedure explicitly refer to "all government witnesses which the attorney for the government intends to call in the presentation of the case in chief." (Proposed amendments to Fed.R. Crim.P. 16(a)(1)(E), effective August 1, 1975).

written or recorded statements or summaries of statements; . . . .

■■■■■ Alaska's discovery rule was derived from standard 2.1 of the ABA Standards Relating to Discovery and Procedure Before Trial (Approved Draft 1970). The commentary to this American Bar Association Standard states in part that:

> Not intended to be included within the classification designated ('persons whom the prosecuting attorney intends to call as witnesses at a hearing or trial') are rebuttal witnesses, i. e., those whom the prosecutor holds in readiness to rebut evidence which he anticipates the accused will present. However, the prosecuting attorney should not be tempted to use this mechanism to avoid disclosing a

witness whose testimony is actually and realistically a part of his case in chief. We are thus of the opinion that the prosecution is under no obligation to furnish defense counsel with the names of potential rebuttal witnesses. We conclude that the allowance of Doucet's rebuttal testimony in the circumstances of this case was not error in that it was not violative of Alaska's discovery rule or due process of law. We also note that McCurry's counsel stated his objection in the form of a motion to suppress all rebuttal testimony. While the motion was properly denied, for the reason given above, the court would have been bound to grant a motion for a continuance to allow counsel to investigate the witness's background.[16]

■■■■■ The judgment is affirmed.[17]

16. See *Irby v. State*, 60 Wis.2d 311, 210 N.W.2d 755 (1973); *Ex parte Jenkins*, 197 Okl. 283, 170 P.2d 235 (1946); *Garcia v. State*, 304 N.E.2d 812 (Ind.App.1973).

17. We note that the trial court instructed the jury that "a reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge." In the

past we have criticized this type of reasonable doubt instruction. *Davenport v. State*, 519 P.2d 452 (Alaska 1974), and *Avery v. State*, 514 P.2d 637 (Alaska 1973). In both cases, we stated our preference for a reasonable doubt definition in terms of "a doubt [which] would cause prudent men to hesitate before acting in matters of importance to themselves." See *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150, 167 (1954).