STATE of Alaska, Petitioner,

v.

Martin L. GILBERT, Respondent.

No. S–7020.

Supreme Court of Alaska.

Oct. 11, 1996.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

George B. Davenport, Robinson, Beiswenger & Ehrhardt, Soldotna, for Respondent.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and SHORTELL, J. Pro Tem.*

*OPINION*

EASTAUGH, Justice.

I.  *INTRODUCTION*

We consider here whether the trial court prejudicially erred in allowing a prosecutorial comment on a criminal defendant's failure to call a witness at trial.  The court of appeals

* Sitting by assignment made pursuant to article       IV, section 16 of the Alaska Constitution.

held that the comment was both impermissible and prejudicial, and reversed the conviction. We reverse, and reinstate the judgment of the trial court.

## II. *FACTS AND PROCEEDINGS*

B.M. was beaten and raped early April 13, 1988, in a snowy lot in Seward. Martin Gilbert was charged with the crimes. Gilbert was then a member of the crew of the F/V *Valoris*. He was questioned by police before and after his arrest. He did not mention during either interview the existence of any witness who could possibly corroborate the time he returned to the boat.

Gilbert testified at trial in his own defense. At trial, he admitted he had sexual intercourse with B.M. in the snowy lot, but claimed it was consensual. He testified that after intercourse, he left the victim "passed out" in the snow and returned to the *Valoris*.

Gilbert's defense was that someone other than he, possibly a man in "a dark coat" seen by a passerby, had beaten and raped B.M. after Gilbert had consensual sex with her, left her in the snowy lot, and walked back to the *Valoris*. In support of this theory Gilbert called two witnesses, including Jeff Jackson, to testify about two men seen nearby close to the time of the assaults. Gilbert brought Jackson back from Arkansas to testify. Gilbert testified that the distance from the lot to the *Valoris* was "under a mile."

On direct examination, defense counsel asked Gilbert: "When ... you got back to your boat was there anything happening?" Gilbert then testified on direct examination at trial that he had seen a crewmate when he returned to the boat at "five twenty-something" the morning of the assaults:

> Yeah, Bob Olson, one of our deckhands that we'd hired in Seattle, was cooking breakfast or cooking, I don't know if he just got back to the boat or not, but he was awake. And I remember looking at the clock. It was five twenty-something because I was worried whether or not I was getting back before Lloyd got up because he's a 69 year old Norwegian and he's really strict about getting—he gets up at 6:00 o'clock every morning, no matter what. And I wanted to—I knew if I could

beat him into my bunk that I could get at least a couple hours sleep.

Gilbert testified on cross-examination that the clock he referred to was "right in" the galley. The prosecutor then questioned Gilbert about whether he had mentioned to police anyone who was up and cooking who could perhaps say when Gilbert returned to the boat. Gilbert admitted that he had not. No further reference was made to Olson until argument.

In his initial closing argument, the prosecutor commented on Gilbert's failure to mention Olson to the police. The prosecutor argued:

> Do you think it's just coincidence that he just happened to look at the bar clock and just happened to note the clock on the ship supposedly when he came in and it just happened to say 5:20 something, isn't that just coincidence? Did you hear him say anything to Lt. Earl about, you know, there's a guy on the ship, Bob Olson, who was cooking breakfast when I came in. He'll tell you what time I came in. When does Bob Olson first show up, Monday, yesterday, here on the witness stand? You didn't hear any mention of that to Lt. Earl. Is that just coincidence?

In his closing argument, Gilbert's counsel argued that the State was better able than the defendant to bring witnesses to court:

> It's not [the victim] versus Martin Gilbert. It is the state of Alaska versus Martin Gilbert. It is the state, their resources, its wealth, coming to bear upon one private individual, in this case it happens to be a commercial fisherman.... [T]hey have a Seward police department at their disposal to investigate, to collect evidence. They've got the power and the wealth to bring FBI agents from Washington, to fly in other witnesses.

Gilbert's counsel also reminded the jury that

> the prosecution has the burden of proving to you or disproving to you all reasonable doubt.... "[A] reasonable doubt may arise not only from the evidence produced," and I think this is going to be important in this case this next phrase, "but also from a lack of evidence. Since the burden is upon the prosecution to

prove every essential element of a crime charged beyond a reasonable doubt, a defendant has the right to rely upon the failure of prosecution to establish such proof."

Gilbert's counsel was quoting Jury Instruction 2(b).

Finally, Gilbert's counsel referred to Olson's presence in the galley at the time Gilbert allegedly returned to the boat. In tracing Gilbert's steps, his counsel stated:

> After Martin Gilbert leaves and sometime probably while he was walking back to his boat, because he arrived there at 5:20 something, he had reason to look, [the prosecutor] kept on making a big deal about that. He wanted—he knew he was coming home late. He wanted to beat his skipper—he wanted to get into bed before his skipper got up. There was a guy there cooking breakfast. The clock is in a natural area, he looks at it, it's 5:20 something. He doesn't know exactly. He knows he's beaten the skipper Lloyd up, jumps into bed. While this is going on, whether [the victim] comes to and starts staggering her way home or whether one or both of these individuals come along, but they get her to a different area ... and they sexually assault her and physically.

In his rebuttal argument, the prosecutor responded to these arguments:

> [Defense counsel] said the state had the power to produce all these witnesses and do things but they had to do it because the State wasn't and the State didn't—well, speaking of witnesses, let me ask you a question; why do you think the defense went to all the effort of bringing Jeff Jackson back from Arkansas but they didn't bother to bring you Bob Olson, this quote Bob Olson that we heard about on Monday, the one man that presumably can give him his alibi? The one man that supposedly is right there when he comes in at 5:20 something in the morning. Ask yourselves and think about that when you listen to what—and reflect on what [defense counsel] is telling you.

Defense counsel immediately objected:

Your Honor, I would object to this line of argument. The instruction says the defense has the burden of producing no witnesses. And there are other considerations as to why Mr. Olson may or may not have been here. I think it's improper for him to suggest that he has the duty of calling those witnesses.

■ The court overruled the objection. The prosecutor then argued to the jury:

> The State's not saying that Mr. Gilbert had any burden of proving anything. I'm just saying if they went to all the trouble of bringing a man here from Arkansas who really doesn't know anything about this case, why do you suppose they didn't go to the effort of bringing somebody here who allegedly saw him at 5:20 in the morning? Think about that. I'll tell you why.... You've heard of the phrase "red herring." That's the job of the defense, to throw out red herrings to distract you.[1]

The jury convicted Gilbert of sexual assault in the first degree and assault in the first degree, in violation of AS 11.41.410(a)(1) and AS 11.41.200(a)(2), respectively. Gilbert appealed his conviction, claiming that "[t]he trial court erred when it failed to strike the District Attorney's comments to the jury concerning Mr. Gilbert's failure to produce an alibi witness during closing argument, thus allowing the District Attorney to engage in prosecutorial misconduct." The court of appeals reversed Gilbert's conviction, holding that the trial court erred in overruling Gilbert's objection to the prosecutor's argument and that the error was prejudicial. *Gilbert v. State*, 891 P.2d 228, 231 (Alaska App.1995).

We granted the State's petition for hearing under Alaska Rule of Appellate Procedure 304(a) and (c).

### III. *DISCUSSION*

#### A. *Prosecutorial Comment on Defendant's Failure to Call a Witness*

■ The parties have extensively discussed the propriety of the prosecutor's com-

---

1. We note that the prosecutor mischaracterized Gilbert's testimony at this point by stating that Olson "saw" Gilbert. Gilbert, however, did not object to this mischaracterization, and consequently failed to preserve any question about its propriety or accuracy.

ments concerning Gilbert's failure to call a witness, and the inferences that can reasonably be drawn from those comments.[2] This is a question of law, which we review *de novo. See Langdon v. Champion,* 752 P.2d 999, 1001 (Alaska 1988).

In *McCurry v. State,* 538 P.2d 100, 104 (Alaska 1975) (citing *Gass v. United States,* 416 F.2d 767 (D.C.Cir.1969), and *United States v. Blakemore,* 489 F.2d 193 (6th Cir. 1973)), *overruled on other grounds by Howe v. State,* 589 P.2d 421 (Alaska 1979), we noted the "usual rule" that a prosecutorial comment on a defendant's failure to call a witness is permitted only when "the witness is peculiarly within the control of the defendant and that witness's testimony can reasonably be expected to elucidate matters already at issue." [3] However, in *McCurry,* we did not reach the question of when such comments are proper, because defense counsel failed to object to the prosecutor's statement. *Id.* at 104.

The question of when a prosecutor may comment on a defendant's failure to produce a witness arose again in *Lewis v. State,* 862 P.2d 181 (Alaska App.1993),[4] where the court of appeals noted that "[n]o Alaska decision has squarely determined the circumstances under which negative comment on a defendant's failure to call witnesses is impermissible." [5] *Id.* at 190. The court of appeals held

**2.** We assume for purposes of this opinion that Gilbert's objection to the prosecutor's comments was properly preserved. When Gilbert's counsel initially objected to the prosecutor's comments, the court responded by stating that "I'm going to overrule the argument at this point. I don't know how far it's going." The prosecution then responded that "[t]he State's not saying Mr. Gilbert had any burden of proving anything," and continued his argument. Gilbert did not object further, move for a mistrial, or request a curative instruction. Arguably, these actions by the court and opposing counsel were intended to satisfy Gilbert's counsel's objection; if so, any further objection may have been waived. *See Hilburn v. State,* 765 P.2d 1382, 1388–89 (Alaska App.1988) (holding that when defense counsel objected to a prosecutor's statement in closing argument, but did not request additional relief or move for a mistrial after the court responded to the objection by stating that "[t]he defense is not required to establish anything," the defendant's claim that the court's actions were inadequate to cure any prejudice were not properly preserved).

  We do not agree with the conclusion of the court of appeals that "[g]iven the court's decision to overrule Gilbert's initial objection, . . . Gilbert's counsel could properly have concluded that further objection would be pointless and might only result in drawing additional attention to the improper argument." *Gilbert v. State,* 891 P.2d 228, 231 n. 1 (Alaska App.1995). Certainly any motion for mistrial or for a written instruction to accompany the other jury instructions could have been made outside the jury's presence. Assuming the best time for an immediate cautionary instruction was during argument itself, however, nothing said by the trial judge indicated an unwillingness to limit the prosecutor to fair comment, and the jury instructions, which counsel had already discussed with the court, contained Instruction No. 2(b). There is consequently no reason to think the trial court, if asked to do so, would have declined to give an immediate cautionary instruction that would

have incorporated or reemphasized this language from that instruction: "[T]he law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence."

**3.** According to *McCormick on Evidence,*

  [t]he cases fall into two groups. In the first, an adverse inference may be drawn against a party for failure to produce a witness reasonably assumed to be favorably disposed to the party. In the second, the inference may be drawn against a party who has exclusive control over a material witness but fails to produce him or her, without regard to any possible favorable disposition of the witness toward the party.
  2 Kenneth S. Broun et al., *McCormick on Evidence* § 264, at 185 (John W. Strong ed., 4th ed. 1992) (footnotes omitted).

**4.** *See also Clum v. State,* 893 P.2d 1277, 1280 (Alaska App.1995) (holding that under either the traditional approach or the more liberal approach, the prosecutor's argument was impermissible).

**5.** The court of appeals also commented that "[t]he 'usual rule' noted in *McCurry* has generated considerable disagreement." *Lewis v. State,* 862 P.2d 181, 190 (Alaska App.1993). The court went on to examine current approaches to the "usual rule." The court noted that the "rule" was criticized by Wigmore, "observing that even in cases where a witness is equally available to both parties, 'the more logical view is that the failure to produce is open to an inference against both parties, the particular strength of the inference depending on the circumstances.'" *Id.* (quoting 2 John H. Wigmore, *Evidence* § 288 (Chadburn rev. 1979) and citing *United States v. Beekman,* 155 F.2d 580, 584 (2d Cir.1946)). Despite this criticism, some jurisdictions continue to apply the traditional version of the rule. *Id.* (citing *People v. Paylor,* 70 N.Y.2d 146, 518

**1328**

that under the facts of that case, it was questionable whether the missing witnesses could "naturally have been expected to be favorable witnesses" for the defendant. *Id.* Accordingly, the court "assume[d] that comment on Lewis' failure to call [the witnesses] would be impermissible." *Id.* The court nevertheless concluded that any impropriety did not warrant a mistrial. The court held that "[s]ince the prosecutor prefaced his comment by acknowledging that the state, rather than Lewis, bore the burden of proof, it seems unlikely that the jury might have interpreted the comment to suggest that the burden be shifted to the defendant." *Id.*

In this case, the court of appeals held that the prosecutor's comments "could not be deemed proper under either the *McCurry* approach or the more flexible approach described in *Lewis.*" *Gilbert,* 891 P.2d at 231. The court stated that "Olson could most naturally have been expected to be neutral—a witness who, even assuming he was peculiarly available to Gilbert, would likely have had little light to shed on the issues in dispute at Gilbert's trial." [6] *Id.* The court stated that "Gilbert did not testify, argue, or imply that Olson, for his part, would have had any occa-

sion to remember the event; indeed, Gilbert's testimony did not even state or suggest that Olson had noticed Gilbert board the *Valoris.*" *Id.* Therefore, the court of appeals held that the comments made by the prosecutor concerning Gilbert's failure to call Olson as a witness were impermissible. *Id.*

▮▮▮ We find it unnecessary to determine whether the court of appeals's conclusion that the trial court erred in overruling Gilbert's objection was erroneous, because if there was any such error, it was harmless.[7] The prosecutor's comments did not improperly shift the burden of proof to the defendant.[8] The asserted error is not of constitutional dimension. In deciding whether an error was harmless, we determine whether the error had a substantial effect on the jury's verdict. *Love v. State,* 457 P.2d 622, 631 (Alaska 1969) (holding that a non-constitutional evidentiary error in a criminal trial is only harmless if the error did not have a substantial effect on the jury's verdict).

In this case, the court of appeals found that "[t]he prosecution's argument effectively called on the jury to speculate on matters beyond the scope of the evidence and the inferences fairly arising from that evidence."

---

N.Y.S.2d 102, 103, 511 N.E.2d 370, 371 (1987)). The court also found that other jurisdictions, "in keeping with the spirit of Wigmore's criticism, have relaxed the requirement that a witness be peculiarly within the control of the defendant and have allowed comment on the failure to call any available witness whose testimony 'would naturally be expected to be favorable' to the defendant." *Id.* (citing *People v. Ford,* 45 Cal.3d 431, 247 Cal.Rptr. 121, 131, 754 P.2d 168, 178 (1988) (*en banc*); *Wheatley v. State,* 465 A.2d 1110, 1111 (Del.1983); *State v. Moore,* 620 S.W.2d 370, 373 (Mo.1981) (*en banc*)). However, some other jurisdictions endorse a very strict application of the "usual rule." *Id.* (citing *Dent v. United States,* 404 A.2d 165, 169–70 (D.C.App. 1979); *Commonwealth v. Niziolek,* 380 Mass. 513, 404 N.E.2d 643, 647 (1980)). At least one state "has forbidden comment under all circumstances." *Id.* (citing *State v. Brewer,* 505 A.2d 774, 777 (Me.1985)).

6. The court of appeals concluded that Olson's testimony would not have been helpful. *Gilbert,* 891 P.2d at 231. We disagree. Even if Olson could not testify that he saw Gilbert's return, it was logical to assume that Olson could testify that at 5:20 he was in the boat's galley, cooking breakfast. That testimony would corroborate

Gilbert's account of what he observed and the time of his return to the boat.

7. We note, however, that such comments by the prosecution might well be unfair under other circumstances, and that they may gratuitously jeopardize otherwise valid convictions.

8. We find unpersuasive Gilbert's argument that the prosecutor's comments in effect shifted the burden of proof from the State to the defendant. In his final comment, the prosecutor prefaced his remarks by stating that "[t]he State's not saying that Mr. Gilbert had any burden of proving anything...." Gilbert's counsel, quoting Jury Instruction 2(b), had previously reminded the jury that

> the prosecution has the burden of proving to you or disproving to you all reasonable doubt.... "[A] reasonable doubt may arise not only from the evidence produced," and I think this is going to be important in this case this next phrase, "but also from a lack of evidence. Since the burden is upon the prosecution to prove every essential element of a crime charged beyond a reasonable doubt, a defendant has the right to rely upon the failure of prosecution to establish such proof."

These reminders, along with the court's jury instructions, were sufficient to ensure that the burden of proof did not shift to the defendant.

*Gilbert,* 891 P.2d at 231. That court held that the prosecutor's unfair argument "yielded substantial prejudice." *Id.* "[U]nable to say that the impropriety did not have a substantial effect on the jury's verdict," the court reversed the conviction. *Id.* (citing *Love,* 457 P.2d at 631–32).

We disagree. In this case, it is unlikely that the prosecutor's comments regarding the defendant's failure to call a witness had a substantial effect on the jury's verdict.

At trial, Gilbert presented evidence in support of his theory that someone else committed the assaults after he returned to the boat. Although Gilbert identified Olson as potentially the only person who could have corroborated the time of Gilbert's return to the boat, Gilbert called two witnesses who testified concerning the presence of two seemingly suspicious men near the scene of the crimes. In support of his defense Gilbert also presented expert testimony from a toxicologist at the Department of Public Safety crime laboratory.

The State, in turn, presented a surfeit of evidence against Gilbert. The victim herself testified that Gilbert raped her. One witness saw Gilbert with B.M. not long before the assaults. The police testified that they found signs of a struggle at the scene, and only two sets of tracks in the snow. These tracks were a female's imprint, and a boot track that appeared to be consistent with the boots Gilbert was wearing that morning. The tracks make untenable Gilbert's theory that the real perpetrator came upon B.M. and assaulted her in the snowy lot after Gilbert left her and returned to the boat. The jury also heard a tape of Gilbert's initial interview with the police, and testimony from Federal Bureau of Investigation experts who testified that body fluid and hair and fiber samples from the crime scene were consistent with samples taken from Gilbert.

In view of the strength of the evidence presented, we hold that the prosecution's comments on Gilbert's failure to call Olson as a witness did not have a substantial effect on the jury's verdict.

Furthermore, the jury instructions overcame any potentially impermissible effect the prosecutor's comments may have had on the jury. Instruction 2(b) in part informed the jury:

> The burden [of] proving the defendant guilty beyond a reasonable doubt always rests upon the prosecution. This burden never shifts throughout the trial, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.... [A] reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence.

Instruction 27 in part informed the jury:

> Every person who testifies under oath is a witness. You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. In deciding whether to believe a witness or how much weight to give a witness's testimony, you should consider anything that reasonably helps you to judge the testimony. Among the things you should consider are the following:
>
> ....
>
> 10. The consistency of the witness's testimony and whether it is supported or contradicted by other evidence.

Instruction 29 told the jury:

> In this case the defendant testified in his own behalf. You should subject the defendant's testimony to the same scrutiny as the testimony of any other witness.

These instructions reinforced the court's direction to the jury that the State bore the burden of proof, and mitigated any potential prejudice of the prosecutor's comments. Consequently, we find that the court of appeals erred in concluding that the prosecutor's comments had a substantial effect on the jury's verdict. Any error, if it had occurred, would have been harmless.

## IV. CONCLUSION

We REVERSE the decision of the court of appeals, and hold that any error regarding the prosecutor's comments about the defendant's failure to call a witness was harmless.

Accordingly, we reinstate the judgment of the trial court. Gilbert's conviction stands.