NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JACKIE RUSSELL ADAMS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11450
Trial Court No. 3AN-12-1048 CR

O P I N I O N

No. 2639 — March 1, 2019

Appeal from the Superior Court, Third Judicial District, Anchorage, Larry D. Card, Judge.

Appearances: Marjorie Mock, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Tamara E. deLucia, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards (initial brief) and Jahna Lindemuth (supplemental brief), Attorneys General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Jackie Russell Adams appeals his conviction for second-degree murder.[1] Among other things, Adams asserts that he is entitled to a new trial because, during the State's closing argument, the prosecutor openly suggested that if the jurors returned an erroneous verdict, this verdict would be corrected later by the courts.

We agree with Adams that the prosecutor's argument was improper, and we further conclude that this improper argument requires reversal of Adams's conviction.

*Background facts*

Adams was convicted of second-degree murder for stabbing and killing Andrew Wilson at the Inlet Inn in Anchorage in January of 2012.

On the evening in question, both men had been among the people drinking in Adams's hotel room. After Wilson spit onto the carpet, Adams physically escorted Wilson out of the room and locked the door (leaving Wilson in the hallway). From the hallway, Wilson kicked the door twice. Adams opened the door and came out of the room, into the hallway, where he and Wilson tussled.

Eventually, the two men stopped fighting, and Adams returned to his room. But a little later, Wilson kicked the door again. This time, when Adams opened the door, there was another scuffle. At the end of this scuffle, Adams re-entered the room holding a steak knife, and he declared that he had stabbed Wilson. Wilson was in fact stabbed in the stomach, and he later died from this wound.

At trial, Adams's attorney conceded that Adams stabbed Wilson, but the defense attorney contended that Wilson had been drunk and violent, and that Adams had

---

[1]  AS 11.41.110(a)(1) or (2).

stabbed Wilson in self-defense, or in defense of the other people in the room, or in defense of the premises against a violent intruder.

The jury rejected these defenses and found Adams guilty of second-degree murder.

*Facts relating to the prosecutor's improper argument to the jury*

At the close of Adams's trial, during the defense closing argument, Adams's attorney discussed the jury instruction defining the concept of "reasonable doubt." This instruction (Alaska Criminal Pattern Jury Instruction 1.06) stated in pertinent part:

> Proof beyond a reasonable doubt must be proof of such a convincing character that, after consideration, you would be willing to rely and act upon it without hesitation in your own important affairs.

During his summation, Adams's attorney urged the jurors to equate the concept of "proof beyond a reasonable doubt" with the kind of convincing proof that the jurors would require before deciding to withdraw life support from a loved one:

> *Defense Attorney*: [Proof beyond a reasonable doubt requires you to have] the same degree of confidence that you would have to have in ... another important affair in your life, and to act without hesitation in that important affair.
>
> . . .
>
> Important affairs in your life, ladies and gentlemen. What would those be? ... Well, important affairs presumably would be ... the same types of stakes that we're dealing with here: things where you have to make a decision that cannot be changed.

. . .

Permanent, irreversible decisions. ... That's the type of decision you're about to make in this case. ... There's only one really good example I can think of, frankly. ...

[*Objection by the prosecutor; the trial judge declines to intervene*]

[*Defense Attorney continues*:] Important affairs in your life. Potentially, ladies and gentlemen, one example of that might be terminating life support for a loved one. ... It's a decision, an extremely important decision, that you may have to make at some point in your life. Maybe some of you have already had to make that decision; I don't know. But it's an important affair in your life. It's permanent; it's irreversible. That's analogous to the decision that you are being asked to make in this case.

As noted in this excerpt from the trial transcript, when the prosecutor objected to the defense attorney's argument, the trial judge declined to intervene. Instead, the judge told the prosecutor that he would simply caution the jury to disregard any arguments of counsel that misstated the law. But the judge never indicated, one way or the other, whether he thought that the defense attorney's argument actually misstated the law.

Having received this response from the trial judge, the prosecutor addressed this issue in her rebuttal summation. She told the jurors that the defense attorney's analogy was wrong:

*Prosecutor*: [The defense attorney] talked repeatedly about this term "permanent and irrevocable", and [argued to you that] ... you should equate [your decision in this case] to your life's [decisions] that are permanent and irrevocable.

I would disagree. I think everybody in this room knows that there's a number of procedures after this court hearing happens.

Your decision is an important one, and I [by] no means mean to trivialize the burden of proof beyond a reasonable doubt. It's a high burden. But if he wants, Mr. Adams can ask the judge to set aside the verdict. He can appeal it to the Court of Appeals. You know that there's a Supreme Court after that. It is not a permanent and irrevocable ... decision.

At this point, Adams's attorney objected. He argued that the various ways in which the trial result might later be judicially altered "are not considerations the jury should be thinking about." In response, the judge cautioned the jurors to disregard any arguments of counsel that misstated the law. But, just as in the preceding bench conference, the judge gave the jurors no indication as to whether he thought that the prosecutor had, in fact, misstated the law.

Having received this response from the trial judge, the prosecutor then restated her point (without further objection):

*Prosecutor*: [Your verdict] is not permanent and irrevocable, the way it is when you decide to kill a loved one. Don't let that hyperbole skew your decision.

Following deliberations, the jury found Adams guilty of second-degree murder.

*Why we conclude that both the prosecutor's and the defense attorney's arguments were improper*

The concept of "proof beyond a reasonable doubt" is difficult, if not impossible, to define with precision. At the time of Adams's trial, Alaska Criminal Pattern Jury Instruction 1.06 defined "proof beyond a reasonable doubt" as evidence which, upon consideration, is so convincing that a person would be willing to act upon it, without hesitation, in their own important affairs. We recently criticized this formulation in *Roberts v. State*, 394 P.3d 639, 644 (Alaska App. 2017).[2]

Here, when Adams's defense attorney delivered his summation to the jury, he urged the jurors to equate the concept of "proof beyond a reasonable doubt" with the kind of convincing proof that the jurors would require before deciding to withdraw life support from a loved one.

This argument was improper because it suggested that the jurors should decide Adams's case as if they had a powerful, if not overwhelming, personal interest in the outcome. The defense attorney told the jurors that they should not be satisfied with the State's evidence unless it was so convincing that they would be willing to act on it, without hesitation, when making a decision that was fraught with emotion and which would have irrevocable and irremediable consequences for one or more people whom they loved.

When the prosecutor objected to the defense attorney's argument, it would have been better if the trial judge had told the jurors that the defense attorney's argument was improper for these reasons, and if the judge had reminded the jurors that they had been selected precisely because they were capable of being disinterested judges of Adams's case — capable of deciding Adams's guilt or innocence without having their

---

[2] This pattern instruction was later amended in light of our decision in *Roberts*.

decision "influenced by sentiment, prejudice, [or] passion." [3]  Indeed, the jurors had taken an oath to abide by this standard.

But after the prosecutor obtained no remedy from the trial judge, she responded to the defense attorney's argument with improper argument of her own.

When the prosecutor addressed the defense attorney's argument during her rebuttal, the prosecutor did not focus solely on the impropriety of the defense attorney's analogy (a decision whether to withdraw life support from a loved one).  Instead, the prosecutor also urged the jurors not to view their decision as final — assuring the jurors that, if they made a mistake, the trial judge or an appellate court would fix it later.  This argument was almost certain to mislead the jurors regarding the importance and finality of their decision.

It is true that trial judges have the authority to vacate a jury's verdict and grant a new trial under Alaska Criminal Rule 33(a) based on "any claim of trial error or pretrial error that would justify reversal of [the] conviction", or based on the judge's assessment that the verdict is against the clear weight of the evidence. [4]

But this authority is circumscribed.  For example, when a defendant claims that the jury's verdict is against the weight of the evidence, a judge may grant a new trial only if the judge concludes that the jury's verdict is *manifestly* against the weight of the evidence — *i.e.*, that the jury's view of the evidence "is plainly unreasonable and unjust." [5]  Likewise, claims that a verdict should be overturned based on newly

---

[3]    Alaska Criminal Pattern Jury Instruction 1.07 (2011).

[4]    *Angasan v. State*, 314 P.3d 1219, 1222 (Alaska App. 2013).

[5]    *White v. State*, 298 P.3d 884, 885 (Alaska App. 2013), quoting *Taylor v. State*, 262 P.3d 232, 234 (Alaska App. 2011).

discovered evidence "are not favored by the courts, and ... are viewed with great caution." [6]

An appellate court has even less authority to second-guess a jury's weighing of the evidence. An appellate court must uphold a jury's verdict unless, even viewing the evidence (and all reasonable inferences to be drawn from it) in the light most favorable to the jury's verdict, no reasonable person could have concluded that the government had proved its case. [7]

In other words, even though our legal system provides certain avenues for challenging a jury's verdict, there are significant limits on judicial authority to interfere with a jury's decision. The prosecutor was technically correct in saying that the jury's decision was not as final and irrevocable as a decision to withdraw life support. But the prosecutor's argument was materially misleading to the extent it suggested that the judiciary could correct any mistake the jurors made. That is simply not true.

In addition, the prosecutor's remarks could be interpreted as downplaying the importance of the jury's decision. One implication of the prosecutor's remarks is the suggestion that, if the jurors were having a difficult time deciding whether the State had proved Adams's guilt, they could simply return a mutually agreeable verdict and then trust that things would be sorted out later by the courts.

---

[6] *Angasan*, 314 P.3d at 1222. *See also* Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procedure* (4th ed. 2015), § 24.11(d), Vol. 6, p. 739:

> Courts are naturally skeptical of claims that a defendant [who was] fairly convicted, with proper representation by counsel, should now be given a second opportunity because of new information that has suddenly been acquired. ... Accordingly, rather exacting standards have been developed for the motion for new trial based on newly discovered evidence.

[7] *See*, *e.g.*, *Morrell v. State*, 216 P.3d 574, 576 (Alaska App. 2009).

The courts of several other jurisdictions have found this type of prosecutorial argument to be reversible error. For example, in *Johnson v. State*,[8] the Maryland Court of Appeals (that state's highest court) ruled that a similar argument entitled the defendant to a new trial.

In *Johnson*, the defense attorney urged the jury to "think very, very carefully" before reaching its verdict, because a verdict "is not exchangeable" and "not returnable tomorrow."[9] In rebuttal, the prosecutor told the jurors that the defense attorney "[was] not being quite honest [with] you" when the defense attorney characterized the verdict as final.[10] The prosecutor told the jurors that the defense attorney's assertion was misleading because a defendant can appeal a guilty verdict, and because "[a defendant has] rights of the appeal [that] go all the way up to the [United States] Supreme Court."[11]

The Maryland high court concluded that the prosecutor's argument was reversible error:

> The message conveyed by the [prosecutor's] remarks was plain ... . The implication was that the jurors need not be unduly concerned about convicting Johnson. If the conviction turned out to be improper, it may be wiped out on appeal ... . One of the most egregious errors counsel can make is to attempt to put the responsibilities of the jurors on some other body.

*Johnson*, 601 A.2d at 1096.

---

[8] 601 A.2d 1093, 1098 (Md. 1992).

[9] *Johnson*, 601 A.2d at 1095.

[10] *Id*. at 1094.

[11] *Ibid*.

Other courts have reached similar conclusions. In *Borgen v. State*,[12] the prosecutor told the jury, during closing argument in the penalty phase of the trial, that "some other court will rectify" any mistake they made.[13] The Texas Court of Appeals condemned this argument:

> The argument was calculated to and probably did give the impression to the jury that, no matter what it did, a higher court would ensure ultimate, perfect justice for [the] appellant, and that therefore [the jury] need not concern itself with assessing a punishment that it sincerely felt was proper. This was ... expressly contrary to our system of criminal justice, for it[,] in effect, told the jury that it could deal harshly with appellant at the punishment stage, rather than concerning itself with an honest effort to determine a proper punishment.

*Borgen*, 682 S.W.2d at 623.

Likewise, in *Howell v. State*,[14] the Mississippi Supreme Court reversed the defendant's conviction because the prosecutor repeatedly told the jury that its verdict was not final and could be appealed.[15] The Mississippi court emphasized the danger that the jury would mistakenly believe that any erroneous findings of fact were readily correctable on appeal:

> The jury was not informed that the jurors ... were the ones who determined the facts, not the appellate court. Just the opposite was left in the minds of the jurors. The

---

[12] 682 S.W.2d 620 (Tex. App. 1984).

[13] *Borgen*, 682 S.W.2d at 622.

[14] 411 So.2d 772 (Miss. 1982).

[15] *Howell*, 411 So.2d at 773.

[prosecutor's] argument could only leave in the jurors' minds [the mistaken impression] that if they decided a close, contradicted [question of] fact and found the defendant guilty[,] the appellate court could change that finding.

*Howell*, 411 So.2d at 777.

We agree with these courts that it is error for a prosecutor to assure the jury that any mistakes in its verdict can and will be remedied later, either by the trial judge or on appeal. In Adams's case, the prosecutor may not have directly assured the jurors that they could count on the judiciary to correct their mistakes, but the prosecutor's remarks implied as much.

Even though Adams's attorney overstepped the bounds of proper argument when he offered his "terminating life support for a loved one" analogy for "proof beyond a reasonable doubt", this was no justification for the prosecutor's remarks. The prosecutor's remarks were clearly improper. The trial judge should have sustained the defense attorney's objection to those remarks and should have given an immediate curative instruction.

*Why we conclude that the prosecutor's argument requires reversal of Adams's conviction*

Our next task is to decide whether the prosecutor's improper argument requires reversal of Adams's conviction, or whether it was harmless error.

Several times in the past, both this Court and the Alaska Supreme Court have dealt with cases where a prosecutor made arguments to the jury that potentially disparaged or undermined the procedural protections afforded to criminal defendants by

our constitution.[16] As shown by these cases, the supreme court has applied two different standards when assessing whether a prosecutor's improper argument requires reversal of a defendant's conviction.

In cases where the prosecutor's improper argument did not deny a constitutional right of the defendant, the supreme court has used the "appreciably affected the verdict" test (*i.e.*, the test that applies to non-constitutional error) to assess whether the prosecutor's improper argument required reversal of a criminal conviction.

For example, in *Brown v. State*, 601 P.2d 221 (Alaska 1979), the prosecutor argued, at the close of the trial, that the defendant was no longer entitled to the presumption of innocence "because [the] State [has] proven, beyond a reasonable doubt, that he is guilty [of the charged crimes]."[17] This argument was improper because, as a matter of law, the defendant's presumption of innocence continues until such time as the jury reaches a verdict of guilty.[18]

Nevertheless, the supreme court declared that the "harmless beyond a reasonable doubt" test does not apply unless the court concludes, not only that the

---

[16] *See, e.g.*, *Goldsbury v. State*, 342 P.3d 834, 835 (Alaska 2015) (the prosecutor commented on the fact that only the victim and the defendant knew what happened, and that the victim was the one who testified at trial); *State v. Gilbert*, 925 P.2d 1324, 1326-27 (Alaska 1996) (the prosecutor commented on the defense attorney's failure to call a witness who, according to the defendant's testimony, could corroborate his alibi); *Brown v. State*, 601 P.2d 221, 225-26 (Alaska 1979) (the prosecutor told the jury that, because of the strength of the State's evidence, the defendant was no longer cloaked in the presumption of innocence); *Graham v. State*, 656 P.2d 1192, 1193-94 (Alaska App. 1982) (the prosecutor improperly commented on the defendant's invocation of his right against self-incrimination).

[17] *Brown*, 601 P.2d at 225.

[18] *Ibid.*

prosecutor's argument was improper, but also that it actually had the effect of denying one of the defendant's constitutional rights:

> [W]here the error *denies* a constitutional right, ... reversal is required unless the error is found to be harmless beyond a reasonable doubt. However, we have never held that the standard of harmless beyond a reasonable doubt applies merely because a constitutional right is involved. While it is true that a constitutional right, the right to the presumption of innocence, is involved here, we believe that the instructions given by the judge both before the trial and before the jury's deliberations were sufficient to ensure that the defendant enjoyed that right and therefore no constitutional right was denied. ...
>
> We are convinced that the court's instructions prevented the error from rising to the level of plain error.

*Brown*, 601 P.2d at 226 (emphasis in the original) (citations omitted).

Similarly, in *State v. Gilbert*, 925 P.2d 1324 (Alaska 1996), the prosecutor suggested that the jury might reasonably draw an adverse inference from the fact that the defense did not call a particular witness (a witness who purportedly could have corroborated the defendant's alibi), but the supreme court concluded that the error was not constitutional. The supreme court noted that the prosecutor prefaced his remarks by expressly telling the jurors that "Mr. Gilbert had [no] burden of proving anything", and the defense attorney echoed this principle in his summation.[19] The court further noted that the trial judge had expressly instructed the jurors that the government bore the sole burden of proof, and that this burden was proof beyond a reasonable doubt.[20]

---

[19] *Gilbert*, 925 P.2d at 1328 n. 8.

[20] *Ibid*.

The supreme court concluded that the attorneys' other statements to the jury, along with the court's jury instructions, "were sufficient to ensure that the burden of proof did not shift to the defendant." [21]   The court therefore treated the error as non-constitutional, and the court employed the "appreciably affected the verdict" test when assessing whether the prosecutor's comment required reversal of the defendant's conviction. [22]

But in cases where the record revealed that the prosecutor's improper comment had the effect of denying a defendant's constitutional rights, the supreme court has held that the defendant's conviction must be reversed unless the error is shown to be harmless beyond a reasonable doubt (the test that applies to constitutional errors).

For instance, in *Goldsbury v. State*, 342 P.3d 834 (Alaska 2015), the supreme court concluded that the prosecutor's adverse comment on the defendant's failure to take the stand at trial was constitutional error because "the language used [by the prosecutor] was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." [23]   Thus, the supreme court ruled that the error would require reversal of Goldsbury's conviction unless the court was convinced that the error was harmless beyond a reasonable doubt. [24]

We think that this case is closer to *Goldsbury* than to *Brown* and *Gilbert*. The challenged remarks were a prominent part of the prosecutor's rebuttal summation, and one obvious implication of the prosecutor's remarks was that the jurors did not need

---

[21]   *Ibid.*

[22]   *Id.* at 1328-29.

[23]   *Goldsbury*, 342 P.3d at 837.

[24]   *Id.* at 837-38.

to worry too much about reaching the proper verdict, because the judiciary would correct any mistake the jurors made. These remarks created a significant possibility that, if one or more jurors found it difficult to reach a decision in Adams's case, those jurors would nevertheless acquiesce in a verdict because of the mistaken belief that some other entity — either the trial judge or an appellate court — bore the ultimate responsibility of doing justice in Adams's case.

We thus conclude that the jurors would naturally and necessarily have drawn an improper inference from the prosecutor's remarks — the inference that the jurors could rely on the courts to cure any mistake in their verdict.

We must then ask whether this improper inference was negated or cured by the trial judge's instructions to the jury. [25]

We note that in both *Brown* and *Gilbert*, the supreme court relied on the trial court's jury instructions as a basis for concluding that the prosecutor's statements did not result in a denial of the defendant's constitutional rights, and that the error was therefore non-constitutional. [26] In *Goldsbury*, on the other hand, the supreme court first concluded, based solely on the nature of the prosecutor's statements, that the error was constitutional, and then the court relied on the trial court's jury instructions to conclude that the error was harmless beyond a reasonable doubt. [27]

Given this discrepancy in the case law, it is unclear whether a trial court's jury instructions are a factor to be considered when determining whether a prosecutor's

---

[25] *See Goldsbury*, 342 P.3d at 839; *Gilbert*, 925 P.2d at 1328 n. 8, 1329; *Brown v. State*, 601 P.2d 221, 225-26 (Alaska 1979).

[26] *Brown*, 601 P.2d at 226; *Gilbert*, 925 P.2d at 1328 n. 8.

[27] *Goldsbury*, 342 P.3d at 837-38.

improper remarks were an error of constitutional dimension, or whether the jury instructions are only relevant when evaluating whether the error was harmless.

However, this distinction is irrelevant to our decision of Adams's case — because, as we have already explained, the trial judge refused to intervene to clarify these matters for the jury, even after the defense attorney objected to the prosecutor's argument. The judge cautioned the jurors to disregard any arguments of counsel that misstated the law — but the judge gave the jurors no indication as to whether he thought that the prosecutor had, in fact, misstated the law.

Thus, even if an appellate court should consider a trial court's jury instructions when assessing whether a prosecutor's improper remarks amounted to a constitutional error or only a non-constitutional error, it makes no difference to our decision in Adams's case because no pertinent curative instructions were given.

Because the prosecutor told the jurors that they could rely on the judiciary to correct any mistakes in their verdict, and because the trial judge did nothing to alert the jury to the error in the prosecutor's improper argument, we conclude that the prosecutor's improper argument was an error of constitutional dimension: it undermined Adams's right to insist that the government prove its case beyond a reasonable doubt. The prosecutor essentially told the jurors that they should not be overly concerned if they were having difficulty deciding what verdict to render, because they could rely on the courts to set things right later.

We must now ask whether this error was harmless beyond a reasonable doubt, given the evidence in the case and the way it was litigated.[28] Based on our review of the record, we conclude that the error in Adams's case was not harmless beyond a reasonable doubt.

---

[28]   *See Goldsbury*, 342 P.3d at 839.

Adams acknowledged that he caused Wilson's death by stabbing him. The question litigated at trial was whether Adams acted in self-defense — or, more precisely, whether the State had proved beyond a reasonable doubt that Adams's claim of self-defense had no merit.

Given the actions of both Adams and Wilson that night, as well as their states of intoxication, Adams's claim of self-defense was at least arguable. And as we have explained, the prosecutor's improper remarks created a significant possibility that, if one or more jurors found it difficult to resolve Adams's claim of self-defense, those jurors would nevertheless acquiesce in a guilty verdict because of the mistaken belief that the judiciary, and not the jurors themselves, bore the ultimate responsibility of doing justice in Adams's case.

For these reasons, we conclude that the State has failed to show that this error was harmless beyond a reasonable doubt. Accordingly, Adams's conviction must be reversed.

*If Adams is retried, the trial judge should revisit the jury instruction on the justified use of deadly force to resist a burglary*

At Adams's trial, the judge (over defense objection) modified the pattern jury instruction on the justified use of deadly force to resist a burglary. Specifically, the judge told the jurors that the use of deadly force is not justified when a person resists a burglary if the burglary was committed solely for the purpose of damaging property inside the building.

We are unaware of any legal basis for the judge's modification of the pattern jury instruction on this issue. That pattern instruction is based on the wording of AS 11.81.350(c)(2): "A person in possession or control of any premises ... may use

... deadly force upon another when and to the extent the person reasonably believes it is necessary to terminate what the person reasonably believes to be a burglary in any degree occurring in an occupied dwelling or building."

Should this question arise on retrial, the trial judge should either instruct the jurors in accordance with this statute, or the judge should explain his legal basis for concluding that this statute does not authorize the use of deadly force against a burglar who enters an occupied dwelling with the intent to damage property inside the dwelling.

*Conclusion*

The judgement of the superior court is REVERSED.